# IN THE COURT OF APPEALS OF IOWA

No. 13-0522
Filed July 16, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DENNIS EARL LEAHY,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, James D. Coil (Motion to Withdraw) and Nathan A. Callahan (Jury Trial and Sentencing), District Associate Judges.

A defendant appeals from the judgment and sentence following his conviction for fraudulent practice in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link and Kevin Cmelik, Assistant Attorney Generals, Thomas J. Ferguson, County Attorney, and James Katcher, Assistant County Attorney, for appellee.

Heard by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

Dennis Leahy appeals his conviction for third-degree fraudulent practice in violation of Iowa Code section 714.8(6) and 714.11(3) (2011) following a jury trial in which he acted as his own attorney. We affirm.

## I.   *Background Facts and Proceedings*

On April 30, 2012, the State filed a trial information charging Leahy with fraudulent practices in the third degree, for alleged acts occurring between February 28, 2012 and March 16, 2012. The district court denied Leahy's application for appointment of counsel.[1] On July 16, attorney James Moriarty entered an appearance on behalf of Leahy. On August 9, Moriarty moved to withdraw as counsel. At the August 16 hearing on the motion to withdraw, Moriarty explained to the court Leahy had directed him to withdraw. After a lengthy colloquy, Leahy stated he wanted to represent himself with Moriarty acting as standby counsel. The district court accepted this proposal and denied Moriarty's request to withdraw.

Prior to the commencement of trial, Moriarty informed the court Leahy did not want him to continue as standby counsel. After a lengthy colloquy, the court accepted Leahy's waiver of counsel and released Moriarty as standby counsel. A jury trial commenced and Leahy was found guilty of fraudulent practices in the third degree. The district court entered judgment and sentenced Leahy to 365 days in jail, but suspended the sentence and placed him on supervised probation for two years, and ordered him to pay a $2225 fine. Leahy appeals.

---

[1] At his initial appearance, Leahy indicated he would hire an attorney. On June 4, Leahy appeared for his arraignment without counsel. On July 9, the district court granted Leahy's request for a continuance to allow him to "hire counsel."

## II.    *Waiver of Right to Counsel*

Leahy claims he was denied his Sixth and Fourteenth Amendment right to counsel because the district court "fail[ed] to obtain a knowing and intelligent waiver of [his] right to counsel before allowing him to represent himself." We review this constitutional claim de novo. *See State v. Cooley*, 608 N.W.2d 9, 13 (Iowa 2000).

The United States Supreme Court has stated that "the Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). However, before the right to self-representation attaches, the defendant must voluntarily elect to proceed without counsel by "knowingly and intelligently" waiving his Sixth Amendment right to counsel and "clearly and unequivocally" requesting to do so. *State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000) (quoting *Faretta*, 422 U.S. at 835).

Before the court accepts a defendant's request to proceed pro se, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (internal quotation marks omitted); *accord State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997). This is because the right to self-represent is simultaneously a relinquishment of the right to counsel and "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *See Faretta*, 422 U.S. at 833

n.46; *accord Martin*, 608 N.W.2d at 450. "The State has the burden of proving the waiver was valid." *Rater*, 568 N.W.2d at 660.

The court engaged in lengthy colloquies with Leahy on two separate occasions prior to trial regarding Leahy's request to represent himself. The first—which took place at the hearing on attorney Moriarty's motion to withdraw as counsel—resulted in the court denying Moriarty's motion and appointing Moriarty as standby counsel. The second—which took place prior to the commencement of trial—resulted in the court accepting Leahy's request to proceed pro se and releasing Moriarty as standby counsel.

A.     *Motion to Withdraw as Counsel*

On July 16, attorney James Moriarty entered an appearance on behalf of Leahy. On August 9, Moriarty moved to withdraw as counsel. A hearing on the motion to withdraw took place on August 16, where Moriarty explained to the court that Leahy had directed him to withdraw. Moriarty also told the court Leahy was under a conservatorship. Upon inquiry by the court, Leahy agreed he wanted to discharge Moriarty as his attorney and stated he had another attorney "on board." The court determined this person was not a licensed attorney. Leahy stated the person was "close to like a legal assistant" and he felt "very confident with him." The court stated, "Well, if he's not licensed to practice law, he can't represent you in this case," to which Leahy responded, "Then I'll represent myself. No problem."[2] The court then engaged in the following colloquy with Leahy:

---

[2] Leahy had previously represented himself on a burglary charge, and he was represented by an attorney on a previous fraudulent practice charge.

COURT: Well, you're charged, Mr. Leahy, with the fraudulent practice in the third degree, which is an aggravated misdemeanor. It carries a maximum possible sentence of up to two years in prison. Do you understand that?

DEFENDANT: Yes, sir. Yes, sir, I do.

COURT: And do you understand that it is a very serious charge?

DEFENDANT: Yes.

COURT: And that you don't have any legal training as an attorney or as a criminal trial attorney. You don't understand—I'm presuming that you don't understand necessarily the rules of evidence or the rules of procedure since you don't have any legal training, and I'm not sure that it would be wise for you to proceed without an attorney. Now, evidently you do have sufficient resources to retain Mr. Moriarty. Do you want to try and get another attorney?

DEFENDANT: I am satisfied with what I have right now without Mr. Moriarty.

COURT: So you wish to proceed to represent yourself in this case?

DEFENDANT: I honestly can't answer that question. It looks like I will have to, represent myself, but I will have some advice. I can't put it in words. I'm—I feel confident with what I have.

COURT: You feel confident with what you have as far as proceeding without an attorney? Is that what you're telling me?

DEFENDANT: Yes.

COURT: And, I guess, do you understand, I guess, maybe the peril you place yourself in by representing yourself?

DEFENDANT: I am fully aware, and I'll take full responsibility.

The court asked Leahy's conservator, his sister Mary Pat Leahy, to come forward and the following record was made:

COURT: All right. What is the basis for the conservatorship? Can you tell me that?

MS. LEAHY: Currently I would say the inability to make good decisions, and I just submit that right now we're right there because I've just pleaded with Dennis to have an attorney—attorney approved by the court, and there's no way that's going to happen for Dennis, but I totally disagree with him.

COURT: You totally disagree with his decision to discharge Mr. Moriarty?

MS. LEAHY: Yes.

THE COURT: Okay. Have you, as his conservator, sat in on any the conversations that Mr. Moriarty has had with Mr. Leahy?

6

MS. LEAHY: The only time I met Mr. Moriarty was when Dennis hired him. I think it was back in July, early July, and Dennis was very excited about the relationship moving forward, and he pulled out $200 from his billfold right away to pay the beginning payment for his retainer fee.

COURT: All right. And Mr. Leahy has sufficient resources to pay counsel?

MS. LEAHY: Yes.

COURT: Well, since there is this conservatorship, is there—do you have any question, I guess, in your mind with regard to the defendant's competency to stand trial in a criminal matter?

MS. LEAHY: No. I think that can work, but he needs an attorney. That's all I'm arguing for, that he must have an attorney.

THE COURT: Well, I can't force him to have an attorney.

MS. LEAHY: I know, and I can't either.

COURT: Well, and if he is competent, and you seem to believe that he is, he is able to make that decision on his own.

MS. LEAHY: Yes.

After more discussion, the court addressed the defendant again to confirm he wanted to proceed to trial self-represented:

COURT: And you no longer want Mr. Moriarty as your attorney, and you wish to proceed without an attorney?

DEFENDANT: Yes, sir.

COURT: And you've heard the comments of Mr. Moriarty, your sister—who is here as your conservator—and you've heard my comments that I think it's not a wise decision for you to proceed without an attorney. And understanding all of that, you still want to proceed without an attorney?

DEFENDANT: Yes, sir.

COURT: All right.

. . . .

COURT: All right. Well, Mr. Leahy, let me ask you this. Evidently you've had some disagreement with Mr. Moriarty; is that correct?

DEFENDANT: Not really.

COURT: All right. There is certainly the ability of yourself to represent yourself in this criminal case. You would have the right to have what's called standby counsel, if you wish to do that, which means that you could continue to retain Mr. Moriarty as your standby counsel to give you advice in your case, but you would, in essence, be representing yourself. Now, I have no idea. Is that something that would interest you, or do you just simply want to discharge Mr. Moriarty?

DEFENDANT: Under the circumstances I think that's an excellent idea. It would serve my cause as well as your cause, the court's and Mary Pat's. I would be 100 percent in agreement. I think that's an excellent idea.

COURT: Mr. Moriarty, are you willing to proceed with that understanding, that you would simply be standby counsel and giving Mr. Moriarty [sic] your best professional advice but that he would be conducting the defense of his case?

ATTORNEY MORIARTY: I'd be willing to do that. . . . Certainly, Your Honor, it's far from an optimal situation, and I have no reason to believe that Mr. Leahy will take my advice any more if I'm sitting beside him here than I was in the conference room a week ago, but I'd certainly be willing to do that in the hopes that he would come around to his advantage, if it's all right with his conservator.

COURT: Well, I've kind of brought his conservator into this conversation just so I understand that he does have sufficient resources to pay counsel and that she has no question but what he's competent to make these types of decisions. But, again, it's Mr. Leahy's decision on how to proceed in this case, but if you're both in agreement with that arrangement, then, I see no problem with that . . . . Is that what you want to have happen, Mr. Leahy?

DEFENDANT: That would be fine.

The court therefore denied Moriarty's motion to withdraw and Moriarty remained on the case as standby counsel for Leahy.[3]

B.    *Waiver of Counsel*

Prior to the commencement of trial, Moriarty informed the court Leahy did not want him to continue as standby counsel. The following exchange took place:

ATTORNEY MORIARTY: I think he knows what the stakes are. He knows that I think it's not in his best interest. Judge Coil [at the hearing on the motion to withdraw] was quite clear that he did not think it was in his best interest, but as the opinion says, he has the right to hang his own self.

COURT: All right. Mr. Leahy, how old are you now?

DEFENDANT: Sixty-four, sir.

COURT: And how far did you go in school?

---

[3] The court also entered a written order summarizing its discussion regarding Moriarty's request to withdraw and denying the motion.

DEFENDANT: I graduated from the University of Northern Iowa.

COURT: And what is your degree in?

DEFENDANT: Business administration.

COURT: And do you understand the charge against you?

DEFENDANT: Yes, sir, I do.

COURT: Can you tell me what the nature of the charge is against you?

DEFENDANT: Fraudulent practice in the third degree. There's a possibility of two years in prison.

COURT: All right. And there's also a possibility of a fine of up to $6250.

DEFENDANT: Yes, there is, sir.

COURT: And there is a 35 percent surcharge on top of any fine.

DEFENDANT: Yes, sir.

COURT: And there is no mandatory incarceration required for a conviction. Do you understand that?

DEFENDANT: Yes, sir.

COURT: There is a mandatory minimum fine of $625 plus a 35 percent surcharge. Do you understand that?

DEFENDANT: Yes, sir.

COURT: That can also be suspended. Is that your understanding?

DEFENDANT: Yes, sir.

COURT: And I'm sure others have been through this with you, Mr. Leahy, and I want you to know that I'm not trying to talk you in or out of anything.

DEFENDANT: Okay.

COURT: I'm just trying to make an adequate record. An attorney can provide a lot of useful assistance in a trial and an attorney is also better trained to conduct a trial than a layperson. Even a well-educated layperson. Do you understand that?

DEFENDANT: Yes, sir.

COURT: I want you to know it's not as easy as good lawyers make it look. There are a lot of evidentiary rules that you will be required to comply with even though you're representing yourself. Just because—for instance, just because you represent yourself doesn't mean that you can use hearsay contrary to the rules of evidence. You can't just start bringing documents up and showing them to the jury. They have to be properly introduced as evidence and that requires a legal foundation. There are safeguards that are reasons for those kinds of foundational requirements. You will be required to comply with the same standards as a lawyer in introducing evidence at a trial, and I think that this trial is going to involve some documentary evidence if I'm not mistaken, Mr. Katcher?

STATE: There will be some.

COURT: Do you understand that you're going to be held to the same standards in the process of offering evidence for the jury to consider?

DEFENDANT: Yes, sir.

COURT: And are you willing to take that responsibility on?

DEFENDANT: Yes, sir.

COURT: Are you willing to follow my directives in regards to what evidence is or is not admissible?

DEFENDANT: Absolutely, sir.

COURT: All right. In addition to that, Mr. Leahy, I mean, you certainly seem articulate to me, but attorneys are trained in addressing potential jurors; they are trained in cross-examining state's witnesses; they are trained in making arguments to the Court; and they are trained in making arguments to a jury. By proceeding on your own you're basically giving up the opportunity to have an attorney to do all of those things for you in a trial. Do you understand that?

DEFENDANT: Yes, sir.

COURT: And is that what you want to do today?

DEFENDANT: Yes, sir.

COURT: All right. Now Mr. Leahy, I want you to consider that there are two dangers in proceeding without a lawyer. Possibly three in your case because as I look through this you did have a conservator at one point; correct? And you do have a conservator now?

DEFENDANT: Yes, sir. That's correct.

COURT: And you did have a guardian at one point; correct?

DEFENDANT: Yes, sir.

COURT: And that guardianship was terminated last year; right?

DEFENDANT: Yes, sir.

COURT: And can you tell me what the reason for that guardianship was?

DEFENDANT: I can't tell you, sir.

COURT: Was it because of your mental condition?

DEFENDANT: I can't tell you that.

COURT: Did you ever have mental health treatment?

DEFENDANT: No. No, I have not.

COURT: Have you ever been medicated for mental health problems?

DEFENDANT: Twelve years ago I was involved. I don't know—there was not a mental problem, no.

COURT: All right. And again, I'm not trying to talk you in or out of anything and I'm not trying to put you on the spot or embarrass you. I'm just trying to make an adequate record because I think you can appreciate that if somebody did have a

mental problem, and it was tied into the events in a criminal charge, that would create a separate kind of defense to a charge that had to do with a person's mental state.

DEFENDANT: Yes, sir.

COURT: And there is no such allegation or pleading in this file, and I just want to clarify that there would be no basis for appeal later on by you saying there should have been a mental illness defense in this case and it wasn't pursued and it wasn't filed and therefore the conviction should be reversed. Are you agreeing with me that there is no basis for such a defense?

DEFENDANT: I'm agreeing with you, sir, absolutely.

COURT: All right. And you want to proceed without that kind of defense?

DEFENDANT: Yes, sir.

COURT: Finally, Mr. Leahy, I do have to ask you about the concern that was raised by your conservator. . . . There are a lot of people out there in different organizations and groups who think that they're legal geniuses and they give people advice on how to handle their legal cases and that ends up getting them into a lot more trouble than they were in to begin with. And it's not because anybody is punishing them for doing that. It's because they just keep making their situation worse by following bad legal advice from people who are not trained lawyers. I just want to express that concern and hear it from you that you're not relying on legal advice from some nonlawyer who is prompting you to take the steps that you're taking here today in representing yourself. Does that make sense?

DEFENDANT: Yes, sir.

COURT: And are you relying on legal advice from a nonlawyer in choosing this course of action?

DEFENDANT: I am relying on no legal advice or hearsay in any way, shape, or form. It's strictly my own voluntary admittance.

COURT: All right. I'm going to accept that. I think that the record is adequate to make a finding that you do appreciate the nature of the charges against you; that you do appreciate the potential penalties; that you do appreciate the usefulness of an attorney, both in the sense of conducting a trial as well as making arguments to the Court and to the jury; and that you are aware of the risks or dangers in continuing without a lawyer; that you are making this choice knowingly and voluntarily on your own, and not being prompted by somebody else to do it in a misguided kind of sense. This is what you want to do, Mr. Leahy; is that correct?

DEFENDANT: Yes, sir, it is.

Ultimately, the court accepted Leahy's waiver of counsel and released Moriarty as standby counsel. Trial commenced and Leahy was found guilty of fraudulent practice in the third degree.

*C.    Faretta Inquiry*

To ascertain a knowing, voluntary, and intelligent waiver of the right to counsel, the court must engage in a "meaningful colloquy" to ensure the accused (1) understands the nature of the charge against him including the allowable punishments; (2) is admonished as to the usefulness of an attorney; and (3) is made aware of the danger in continuing without an attorney. *Cooley*, 608 N.W.2d at 15 (citing *Faretta*, 422 U.S. at 835); *see also Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) ("To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."). "The purpose of a colloquy is to provide fair notice of the obstacles inherent in self-representation before an accused embarks on so perilous an endeavor." *Cooley*, 608 N.W.2d at 16.

Although we observe the inquiry made at the hearing on the motion to withdraw is arguably a "meaningful colloquy,"[4] we limit our review to the court's second inquiry with Leahy prior to the commencement of trial—that which resulted in the court's acceptance of Leahy's waiver of counsel. The inquiry

---

[4] Leahy does not appeal the court's order following the hearing on the motion to withdraw concerning Moriarty's status as standby counsel. However, we find the information discussed during the motion to withdraw hearing relevant to Leahy's claim concerning his mental capacity discussed below.

afforded Leahy prior to the commencement of trial was comprehensive. The court inquired into Leahy's age, education, and his understanding of the charge against him and its penalties. The court repeatedly warned Leahy of the dangers he would encounter as his own attorney, including that he would be held to the same standard of an attorney with respect to details such as cross-examination, addressing the jury, and the rules of evidence.[5] The court discussed Leahy's decision not to raise any kind of mental illness defense and whether there was a basis for such a defense. Throughout this colloquy, Leahy remained consistent that he wanted to represent himself and he was ready for that responsibility.

On appeal, Leahy alleges his waiver was unknowing and involuntary because the court discussed the name but not the "nature" of the offense or each of its elements and lesser included offenses, and points out the court discussed only one potential defense. We disagree. Leahy was represented by counsel prior to trial. Attorney Moriarty's statements alluded to several discussions he had with Leahy, and Moriarty said it was his opinion Leahy "knows what the stakes are." And Leahy was not a novice to the criminal justice system—he had previously represented himself on a burglary charge, and he was represented by an attorney on a previous fraudulent practice charge. *See*, *e.g.*, *State v. Willform*, No. 11-0079, 2012 WL 300317, at *2 (Iowa Ct. App. Feb. 1, 2012) (reviewing a defendant's waiver of counsel and noting, "Willform is no novice in the criminal justice system").

---

[5] *But see State v. Rush-Brantley*, No. 13-0445, 2014 WL 2884776, at *1 (Iowa Ct. App. June 25, 2014) (reversing and remanding for a new trial where the district court's colloquy with the defendant did not include discussion of the dangers of self-representation or the advantages of having competent and trained legal counsel representing his interests).

From our review of the entire record, we conclude the colloquy between the court and Leahy was sufficient to determine his waiver was voluntary, knowing, and intelligent.[6] Indeed, the court's inquiry essentially followed that set out in the Bench Book for United States District Judges, which does not mention express defenses to crimes, elements of offenses charged, or potential lesser included offenses or mitigating factors. *See* Guideline For District Judges, 1 *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986); *accord United States v. McDowell*, 814 F.2d 245, 251-52 (6th Cir. 1987) (quoting the Bench Book guideline in appendix); *Martin*, 608 N.W.2d at 450 (stating "we [have previously] pointed the bench and bar to a model inquiry for determining a knowing and intelligent waiver of counsel. The model inquiry is found in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986), as well as *United States v. McDowell*, 814 F.2d 245, 251-52 (6th Cir. 1987)"). Under these circumstances, we conclude the court's colloquy provided fair notice of the "obstacles inherent in self-representation" before Leahy "embarked on so perilous an endeavor." *See Cooley*, 608 N.W.2d at 16.

D.    *"Gray-Area" Defendant*

In conjunction with his claim challenging his waiver of counsel, Leahy further contends the court "erred in not considering [his] mental health in determining whether to grant his request to waive his right to counsel and

---

[6] In reaching its decision to accept Leahy's waiver of counsel, the district court acknowledged this court's ruling in *State v. Clarke*, No. 11-1096, 2012 WL 3590054, at *2-3 (Iowa Ct. App. Aug. 22 2012), in which the court reversed and remanded for a new trial where the defendant "asserted his desire to proceed pro se, but was not adequately informed as to the attendant consequences of such a choice, then denied the right." The circumstances in this case are in clear contrast to those presented in *Clarke*.

represent himself at trial." To clarify, we observe Leahy does not dispute he was competent to stand trial, but rather asserts the court erred in not considering, sua sponte, his mental health in determining whether to grant his request to waive his right to counsel and to represent himself at trial.

We have determined the colloquy between the court and Leahy was sufficient to ascertain Leahy's knowing, voluntary, and intelligent waiver of his right to counsel. But even where the invocation of the right of self-representation meets these requirements, "the right of self-representation is not absolute" and courts are permitted to place a "mental-illness-related limitation on the scope of the self-representation right." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). Specifically, courts can "take realistic account of the particular defendant's mental capacities" and are allowed to insist upon representation by counsel for "gray-area" defendants—those competent enough to stand trial "but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *See id.* at 177, 178.

Discussing *Edwards*, this court has stated, "When a trial court is presented with a mentally ill or mentally incapacitated defendant who, having been found competent to stand trial, elects to represent himself, the trial court also must ascertain whether the defendant is, in fact, competent to conduct the trial proceedings without the assistance of counsel." *State v. Jason*, 779 N.W.2d 66, 74 (Iowa Ct. App. 2009). And in cases where the court has not sufficiently investigated the defendant's competency to represent himself, this court has remanded the proceedings to allow the court to determine the defendant's competency to proceed pro se. *See id.* at 75-76 ("We find that Jason may be a

'gray-area' defendant who was competent to stand trial, but not competent to take on the expanded role of representing himself at trial. We remand to the trial court for a hearing to determine whether it would have denied Jason's right to represent himself at trial in light of the standards established in *Edwards* and subsequent cases that have recognized a constitutional violation when a defendant who is not competent to present his own defense without the help of counsel is allowed to do so."); *State v. McCullah*, No. 08-0403, 2010 WL 5394747, at *10 (Iowa Ct. App. Dec. 22, 2010) ("*McCullah I*") ("Although the trial court was diligent in verifying McCullah was competent to stand trial and touched on McCullah's mental health numerous times, our review of the record shows the court did not expressly consider whether McCullah suffered from a severe mental illness such that the court would not have allowed him to represent himself.").

The State disagrees with this court's interpretation and application of *Edwards* as requiring a "new duty" of the court, and states *Edwards* "merely imbues the trial courts with a discretion they previously lacked." While we agree with the State that *Edwards* did not explicitly create a new duty of the trial court to allow only defendants meeting a specific standard of competency to represent themselves,[7] it appears our courts have interpreted the *Edwards* decision as requiring the trial court to "investigate" whether the defendant is properly

---

[7] Indeed, in *Edwards*, the Supreme Court stated:

> Indiana has also asked us to adopt, as a measure of a defendant's ability to conduct a trial, a more specific standard that would "deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury." We are sufficiently uncertain, however, as to how that particular standard would work in practice to refrain from endorsing it as a federal constitutional standard here. We need not now, and we do not, adopt it.

*Edwards*, 554 U.S. at 178.

competent to represent himself.[8]  *See State v. McCullah*, No. 12-0081, 2013 WL 530943, at *2 (Iowa Ct. App. Feb 13, 2013) ("*McCullah II*"); *State v. Hays*, No. 11-0669, 2012 WL 4513885, at *4-5 (Iowa Ct. App. Oct. 3, 2012).

At the outset, we observe a defendant is generally presumed competent "unless evidence appears to the contrary."  *Cooley*, 608 N.W.2d at 13. Therefore, although the court must investigate whether the defendant is competent to represent himself, *see Jason*, 779 N.W.2d at 74, "[a] hearing is not necessary unless a court has reason to doubt a defendant's competence." *Cooley*, 608 N.W.2d at 13-14.  The trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant."  *Edwards*, 554 U.S. at 177; *Jason*, 779 N.W.2d at 74.  The premise underlying this issue is "the fairness of the trial." *Jason*, 779 N.W.2d at 75 (citing *Edwards*, 554 U.S. at 177-78).

In *Jason* and *McCullah I*, reviewing pre-*Edwards* waivers of counsel and trials, this court remanded for a hearing to determine the defendants' competency to represent themselves at trial.  In those cases, this court instructed:

---

[8] "We may construe the Iowa Constitution differently than its federal counterpart, despite the provisions containing nearly identical language and being structured generally with the same scope, import, and purpose."  *State v. Kooima*, 833 N.W.2d 202, 206 (Iowa 2013); *see State v. Pals*, 805 N.W.2d 767, 771-72, 781-83 (Iowa 2011) (noting Iowa's more stringent application of state constitutional provisions than federal caselaw applying nearly identical federal counterparts); *Varnum v. Brien,* 763 N.W.2d 862, 879 n.6 (Iowa 2009) (observing "we have jealously guarded our right to 'employ a different analytical framework' under the state equal protection clause as well as to independently apply federally formulated principles" (citations omitted)); *see also State v. Baldon*, 829 N.W.2d 785, 803 (Iowa 2013) (Appel, J., specially concurring) (reviewing "the foundations of the well-established Iowa law that we jealously reserve our right to construe our state constitution independently of decisions of the United States Supreme Court interpreting parallel provisions of the Federal Constitution").

We emphasize that the issue to be decided on remand is not whether the defendant lacked the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel . . . . That fact, however, has no bearing on whether he was competent to represent himself for purposes of *Edwards.* Rather, the determination of his competence or lack thereof must be predicated solely on his ability to "carry out the basic tasks needed to present his own defense without the help of counsel"; [*Edwards*, 554 U.S. at 175-76,]; notwithstanding any mental incapacity or impairment serious enough to call that ability into question. Of course, in making this determination, the trial court should consider the manner in which the defendant conducted the trial proceedings and whether he grasped the issues pertinent to those proceedings, along with his ability to communicate coherently with the court and the jury.

*Jason*, 779 N.W.2d at 76 n.2; *McCullah I*, 2010 WL 5394747, at *10 n.3. In line with those prior rulings, Leahy requests we remand to the district court "for proper consideration of whether he was competent for self-representation."

We need not remand for a hearing, however, if the record indicates the district court engaged in such an investigation in the underlying proceeding in order to dispel any doubts the court may have had concerning Leahy's ability to present his own defense. Although the State argues we should review this issue for abuse of discretion, we conduct a de novo review of this constitutional claim. *See McCullah II*, 2013 WL 530943, at *2; *Hays*, 2012 WL 4513885, at *4-5; *State v. Bell*, No. 11-1267, 2012 WL 3196646, at *1 n.1 (Iowa Ct. App. Aug. 8, 2012).

Here, the court was aware Leahy was under the conservatorship of his sister and had previously been under a court-ordered guardianship of his sister. The court was aware the guardianship had terminated prior to the incidents at issue and was not in effect at the time of trial. Still, the court stated, "I'm not trying to offend you, Mr. Leahy, or make you defensive, but I am a little concerned about whether or not your mental state is adequate for proceeding to

trial [pro se] given the allegations that are contained in here." Leahy points to this statement by the court to support his claim that he was not competent to represent himself. We believe, however, this statement—coupled with the court's subsequent inquiry—is indicative of the court's effort to determine Leahy's competency to represent himself.

When asked by the court for his opinion on Leahy's decision to represent himself, Leahy's then-standby counsel Attorney Moriarty raised no concerns about Leahy's mental health, opined Leahy "knows what the stakes are," and stated, "He knows that I think it's not in his best interest." Leahy's conservator and former guardian (his sister) did not want Leahy to represent himself, but she agreed Leahy was competent to make the decision to represent himself.[9] The court engaged in two lengthy colloquies with Leahy. The court was aware Leahy was sixty-four years old and a college graduate.[10] When asked by the court if he had received mental health treatment or medication in the past, Leahy responded he had not received mental health treatment, and had been medicated for mental health problems "twelve years ago" but "there was not a mental health problem, no." Leahy stated he understood a defendant has the ability to raise a mental

---

[9] In our de novo review, our overriding task is to determine whether Leahy received a fair trial. *See Jason*, 779 N.W.2d at 75. Accordingly, despite the fact that different trial judges conducted the hearing on Moriarty's motion to withdraw and Leahy's trial, we will consider the information before the court as a whole, including the information available at sentencing that will be discussed below. *See McCullah II*, 2013 WL 530943, at *2 (reviewing all evidence in the record to determine whether the defendant was sufficiently competent to represent himself at trial even if such review entails "an element of 'Monday morning quarterbacking'" because "we are not so much concerned about the unfairness to the trial judge who may be reversed on information that was unavailable to him or her, but rather whether the defendant received a fair trial").

[10] We in no way insinuate that the fact a defendant holds a college degree, in and of itself, precludes a court from concluding a defendant should not be permitted to represent himself. *See Jason*, 779 N.W.2d at 75.

health defense in a criminal proceeding, but stated there was "absolutely" no basis for that type of defense in his case.

Leahy points to a mental health evaluation completed by a psychiatric social worker prior to sentencing, which stated Leahy "appears to have Bipolar Disorder." However, the evaluation also indicated Leahy "has not taken medication for well over ten years, has not required inpatient psychiatric treatment and has not exhibited any symptoms that would be construed as being a danger to self or others that would dictate involuntary treatment." The evaluation described Leahy "pleasant, verbal and cooperative" and "oriented as to person, place and time appearing to be in good contact with reality." In terms of his actual performance at trial, Leahy made an appropriate objection to the State's evidence and cross-examined several of the State's witnesses. In any event, pitfalls Leahy may have encountered during self-representation are precisely the things the court warned him about in its inquiry. *Faretta v. California*, 422 U.S. at 834 ("[A]lthough he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.)).

"[M]ental illness is not a singular category [or] a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Jason*, 779 N.W.2d at 75 (internal quotation marks omitted). Here, we observe the trial court was in the best position "to make more fine-tuned mental capacity decisions, tailored to [Leahy's]

individualized circumstances."[11]  *See Edwards*, 554 U.S. at 177; *Jason*, 779 N.W.2d at 74.  Upon our de novo review and giving due consideration to the overriding question of whether Leahy received a fair trial, we conclude the district court investigated Leahy's competency to self-represent and ruled correctly in finding Leahy competent to represent himself.

### III.    Other Claims

Leahy challenges the jury instructions and sufficiency of the evidence supporting his conviction.  Leahy did not raise these issues before the district court.[12]  *See State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012) ("Issues on appeal not raised in the district court are deemed waived.").

At oral argument, Leahy conceded if we conclude his waiver of right to counsel was valid then these claims are not preserved for our review.  Leahy's self-representation does not excuse his failure to comply with applicable rules of criminal procedure and we therefore conclude these issues are not preserved for our review.  *See State v. Eldridge*, 590 N.W.2d 734, 736 (Iowa Ct. App. 1999);

---

[11] We recognize this case bears many similarities to *Jason*, 779 N.W.2d at 76, in which we remanded for a competency hearing.  Again, the original waiver of counsel and trial in *Jason* took place pre-*Edwards*.  We further recognize the very nature of this issue implicates individualized review from our courts; and moreover, that trial courts are capable—on the first go-around—of determining a defendant's competence or lack thereof predicated on the defendant's ability to carry out the basic tasks needed to present his own defense without the help of counsel.  We are satisfied the trial court did just that in this case.

[12] Leahy did not object to the jury instructions or make a motion for judgment of acquittal on his claim of insufficient evidence or before the trial court.  *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) ("Normally, objections to giving or failing to give jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case."); *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal.").

*see generally Cooley*, 608 N.W.2d at 14 (Iowa 2000) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." (citing *Faretta*, 422 U.S. at 835)).

## IV. Conclusion

Having considered all issues presented on appeal, we affirm the judgment and sentence entered by the district court on Leahy's conviction for third-degree fraudulent practice.

**AFFIRMED.**