STATE of Iowa, Appellee,

v.

Steven COOLEY, Appellant.

No. 98–802.

Supreme Court of Iowa.

March 22, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Denver D. Dillard, County Attorney, and Jerry Vander Sanden, Assistant County Attorney, for appellee.

SNELL, Justice.

Defendant, Steven Cooley, appeals his conviction following a jury trial in which he acted as his own attorney. Defendant claims the trial court's failure to warn him of the dangers of self representation rendered his waiver of the Sixth Amendment right to counsel unknowing and unintelligent, thereby resulting in an infringement of his rights as guaranteed by the United States Constitution. We transferred this case to the Iowa Court of Appeals which affirmed the conviction. On further review, we now vacate the court of appeals' decision, reverse the judgment of the district court and remand for a new trial.

## I. Background Facts and Proceedings

Defendant, Steven Cooley, was charged with, and found guilty of, burglary in the third degree, habitual offender, in violation of Iowa Code sections 713.1, 713.6A, and 902.8 (1997). At his arraignment, defendant appeared without counsel. The following colloquy took place:

> THE COURT: This is the case of State of Iowa vs. Steven Melvin Cooley. It's number FECR 19164. Is that your true and correct name, sir?
>
> THE DEFENDANT: That's correct, sir.
>
> THE COURT: Let the record show that the defendant appears personally without counsel. At the time of his initial appearance, Mr. Cooley indicated to Judge Newmeister that he did not want any attorney appointed to represent him. Is that correct, Mr. Cooley?
>
> THE DEFENDANT: That's absolutely correct.

At the conclusion of the proceeding, Cooley requested the court's assistance in filing pretrial motions and obtaining subpoena forms. At no point did the court further address the defendant as to the advisability of self-representation.

On February 11, 1998, the court heard Cooley's Motion to Proceed Pro Se, in which he stated he was "fully advised of

the pitfalls claimed to be associated with one representing himself, but [that he] had found them to be without merit, while representing himself in numerous previous jurisdictions." The following exchange was preserved for the record:

THE COURT: Now, you understand that you have a Constitutional right to have a lawyer defend you in a criminal action, such as this, and you have a right to have the State pay for the criminal attorney to defend you. You understand that you have that Constitutional right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And what do you desire to do in regard to that particular Constitutional right?

THE DEFENDANT: With regard to that Constitutional right, Your Honor, I would only ask that a lawyer be allowed to sit with me at trial and that otherwise I do not have no desire to have one around me.

THE COURT: Okay. You want to have a stand-by counsel; is that what you're saying?

THE DEFENDANT: That at actual trial, in case there's a question of law that I would want to ask him about.

THE COURT: Okay.

The discussion then focused on the appointment of a female attorney as stand-by counsel and on the defendant's access to legal research material. Before concluding the hearing, the court again visited with the defendant concerning the appointment of counsel.

THE COURT: Well, fine. You're exercising your right to have stand-by counsel at the trial.

THE DEFENDANT: At trial.

THE COURT: Okay.

THE DEFENDANT: Yes.

THE COURT: But you're waiving your right to have a lawyer in regard to trying the case. You plan on proceeding pro se and trying the case yourself?

THE DEFENDANT: That's correct, sir.

THE COURT: But you want stand-by counsel.

THE DEFENDANT: At the trial.

THE COURT: At the trial.

THE DEFENDANT: In case there's points of law that would rise up that I'd need to question.

Cooley made four subsequent appearances before the court to discuss pretrial matters. No further mention of defendant's representation was documented until just prior to jury selection, when the court entertained a motion concerning closing arguments.

THE COURT: Well, I'm not going to order that Ms. Ableïdinger give any closing argument. You have chosen to represent yourself in this matter. If you choose to have Ms. Ableidinger or any other lawyer represent you in this matter, that's another story. But right now she is only standby counsel at the court's request because your choice is to represent yourself.

DEFENDANT: Your Honor, I would rebut that regards to the fact that Ms. Ableidinger was appointed to assist me at trial on points of law and I think that in itself makes her a second counsel, and I think the law on 18(b) is clear that two counsel can go between a person's last argument.

THE COURT: Well, I'm not requiring Ms. Ableidinger to do any argument for you whatsoever. What you all agree to during trial is up to you. I will cross that bridge when I come to it. But you seem to have some notion that she has to do this at your request. I don't believe she has to. She's there to provide you with—to answer any questions during the trial if you have any.

DEFENDANT: Uh-huh.

THE COURT: She was not, as I understand it, in this case to prepare opening argument—or opening statement or

closing argument or examination of the witnesses. You have chosen to take that on yourself.

DEFENDANT: Yes, sir. Well, we can deal with that at the time then.

The trial court then introduced Cooley to the jury and informed them that the defendant would represent himself. Cooley was later found guilty and sentenced to an indeterminate term of imprisonment not to exceed fifteen years.

Defendant appealed his conviction on the grounds that the trial court violated his Sixth Amendment rights by failing to conduct an inquiry into his understanding of pro se representation and into his competency to make the decision to act as his own attorney. The State denied error was preserved as to either of these claims maintaining Cooley failed to provide a record in support of the former argument, and that he had not adequately briefed or cited authority to substantiate the latter.

While the court of appeals held the competency to stand trial issue had been waived, it also concluded the exchanges between Cooley and the trial court did not, in and of themselves, establish a knowing and intelligent waiver. Rather than reverse the defendant's conviction, however, the court instead reasoned that Cooley's extensive familiarity with the criminal justice system, and the emphatic nature of his pleadings in which he professed a knowledge of the pitfalls inherent in self-representation, rendered a lengthy admonishment by the trial court unnecessary. Under the circumstances, it was determined Cooley did in fact knowingly waive his right to counsel.

On further review defendant contends the court of appeals erred in holding his pleadings and prior experience in the legal system provided sufficient evidence of a knowing and intelligent waiver of counsel. The ruling, he argues, effectively relieved the trial court of its duty to make a meaningful inquiry and was tantamount to a harmless error analysis, which he posits is proscribed by both the Iowa and United States Supreme Courts.

## II. Analysis

### A. Scope of Review

■ We apply a de novo review standard to the constitutional issues raised by Cooley. *State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997); *State v. Spencer*, 519 N.W.2d 357, 359 (Iowa 1994).

### B. Preservation of Error—Establishing Record

■ As a preliminary matter, the State avers Cooley failed to brief or argue his claim that the trial court posed an insufficient inquiry as to the defendant's competence to represent himself, thereby resulting in a waiver of the issue on appeal. Iowa Rule of Appellate Procedure 14(a)(3) provides: "Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue."

Cooley's competence was not questioned during oral argument, nor was the matter referenced in the defense brief beyond a heading which reads:

THE TRIAL COURT ERRED IN CONDUCTING INSUFFICIENT INQUIRY INTO THE DEFENDANT'S UNDERSTANDING OF PRO SE REPRESENTATION AND INTO WHETHER THE DEFENDANT WAS COMPETENT TO MAKE THE DECISION TO REPRESENT HIMSELF, ALL IN VIOLATION OF THE SIXTH AMENDMENT.

The State has interpreted this heading as a claim by Cooley that he was either incompetent to act pro se, or that the trial court owed him a duty to inquire as to his mental status. In either event, Cooley failed to articulate any arguments to that end so the point is moot.

■ Moreover, a defendant is generally presumed competent unless evidence appears to the contrary. *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991). A hear-

ing is not necessary unless a court has reason to doubt a defendant's competence. *Godinez v. Moran,* 509 U.S. 389, 401 n. 13, 113 S.Ct. 2680, 2688 n. 13, 125 L.Ed.2d 321, 333 n. 13 (1993); *State v. Edwards,* 507 N.W.2d 393, 395 (Iowa 1993); *see also* Iowa Code § 812.3 (1997). No such evidence arose prior to, or during, the trial to which Cooley has brought our attention to bear. The issue is waived.

▪ With regard to Cooley's charge that the trial court failed to conduct a colloquy to determine whether his waiver of counsel was proffered knowingly and understandingly, the State alleges the defendant failed to establish a record for appeal.

The State asserts the trial court had "off the record" conversations with Cooley regarding self-representation,[1] and that it is incumbent upon the defendant to supply the court with a record affirmatively disclosing any error relied upon for appeal. Iowa Rule of Appellate Procedure 10(c) provides:

> c. *Statement of the evidence of proceedings when no report was made or when the transcript is unavailable.* If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be filed with the clerk of the trial court and served on appellee within twenty days after the filing of the notice of appeal. Appellee may file with the clerk of the trial court and serve on appellant objections or proposed amendments to the statement within ten days after service of appellant's statement. Thereupon the statement and any objections or proposed amendments shall be submitted to the trial court for settle-

ment and approval and as settled and approved shall be included in the record on appeal.

The State reasons that since Cooley failed to provide a transcript of the alleged conversations, or to recreate the discourse from memory, his claim should be waived because a reviewing court cannot predicate error on speculation. *State v. Douglas,* 485 N.W.2d 619, 625 (Iowa 1992).

▪ The court of appeals rejected this argument holding that when a defendant asserts a lack of inquiry, the court will presume there is no record to recreate under rule 10(c). We agree with the logic of this ruling. Here, the State requests Cooley produce a transcript of a conversation he denies ever took place. The defendant is being asked to prove a negative. If the State has reason to believe that an off the record colloquy took place, it is free to rebut the defendant's assertions to the contrary, and to produce evidence to that end.

Thus in the case at hand, it is the responsibility of the State to uphold the validity of Cooley's waiver of counsel.

## C. Waiver

▪ A defendant has a Sixth and Fourteenth Amendment right to self-representation under the United States Constitution. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *Rater,* 568 N.W.2d at 658. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent oneself, an accused must knowingly and intelligently forgo those relinquished benefits." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581; *Rater,* 568 N.W.2d at 658. The Supreme Court has imposed

---

1. Prior to his arraignment, defendant filed an Application for Appointment of Counsel. Although the request was approved, a handwritten notation on the document indicates the defendant "does not want an attorney." Sim-

ilarly, the Enrolled Order of defendant's Initial Appearance, at which Cooley was present, states that the district court appointed counsel for the defendant but was aware that he did "not want an attorney."

"rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting a waiver of the right to counsel at trial." *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261, 276 (1988). A searching or formal inquiry is among the procedures required before an accused's waiver of counsel may be accepted. *Id.* at 299, 108 S.Ct. at 2398, 101 L.Ed.2d at 276–77. While the extent of a trial court's inquiry may vary depending on the nature of the offense and the background of the accused, some sort of meaningful colloquy must be accomplished. *Id.* at 298, 108 S.Ct. at 2398, 101 L.Ed.2d at 276–77; *Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309, 320–21 (1948); *Rater*, 568 N.W.2d at 660. In *Patterson* the Court remarked:

> [W]e require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during postindictment questioning— *not* because postindictment questioning is "less important" than a trial . . .—but because the full "dangers and disadvantages of self-representation" during questioning are less substantial and more obvious to an accused than they are at trial.

*Patterson*, 487 U.S. at 299, 108 S.Ct. at 2398, 101 L.Ed.2d at 276–77 (citations omitted).

Thus a serious and weighty duty has been imposed upon trial courts to determine whether a waiver is competent and intelligent. *Von Moltke*, 332 U.S. at 723, 68 S.Ct. at 323, 92 L.Ed. at 320–21; *Johnson*, 304 U.S. at 465, 58 S.Ct. at 1023, 82 L.Ed. at 1467. The Court described the duty thusly:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The

fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

> [A] mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel. [T]his case shows that such routine inquiries may be inadequate although the Constitution "does not require that under all circumstances counsel be forced upon a defendant."

*Von Moltke*, 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321 (citations omitted).

 A waiver is made knowingly when the accused is apprised of the factors delineated above, admonished as to the usefulness of an attorney at that particular proceeding, and made cognizant of the danger in continuing without counsel. *See Patterson*, 487 U.S. at 298, 108 S.Ct. at 2398, 101 L.Ed.2d at 276; *Von Moltke*, 332 U.S. at 723–24, 68 S.Ct. at 323, 92 L.Ed. at 320–21; *Rater*, 568 N.W.2d at 658. A waiver that is not voluntary and intelligent cannot be accepted. *Godinez*, 509 U.S. at 401–02, 113 S.Ct. at 2688, 125 L.Ed.2d at 334; *Rater*, 568 N.W.2d at 658. In other words, a waiver that does not meet these criteria is not valid. *See Godinez*, 509 U.S. at 400, 113 S.Ct. at 2687, 125 L.Ed.2d at

334; *Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 320–21.

The United States Court of Appeals, Eighth Circuit, recently addressed the question of the degree of inquiry necessary to establish adequacy of counsel when a conflict of interest arose between a defendant and his lawyer. *Atley v. Ault,* 191 F.3d 865 (8th Cir.1999). The defendant, Atley, filed a petition for habeas corpus relief claiming the state trial judge failed to fully investigate a conflict of interest, which required a substitution of counsel in order to safeguard defendant's constitutional right to representation. *Id.* at 866. The federal court granted Atley relief because:

> [T]he trial court's dialogue improperly assumed answers to questions that were never asked and were necessary to its determination of whether the alleged conflict of interest required the substitution of new counsel.

*Id.* at 872.

■ The purpose of a colloquy is to provide fair notice of the obstacles inherent in self-representation before an accused embarks on so perilous an endeavor. The inquiry afforded Cooley was limited. He was informed of his right to counsel and told an attorney would be provided at no cost. He was not, however, warned of the dangers he would encounter as his own attorney. Nor was he advised with respect to the above mentioned criteria.

Although Cooley declared in his Motion to Proceed Pro Se that he was "fully advised of the pitfalls claimed to be associated with one representing himself," the trial court did not attempt to ascertain which specific pitfalls defendant was aware of. Nor was any further inquiry made as to Cooley's professed familiarity with the justice system and how that experience prepared him to represent himself. As in *Atley,* the trial court assumed answers to questions that were never asked.

The failure of the trial court to inquire and advise the defendant of the dangers of proceeding pro se leaves the record deficient to permit the reviewing court to properly determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently. Applying the standards and guides as established by the federal courts, we find the defendant was not afforded an adequate constitutional inquiry by the trial court.

D. Harmless Error

■ Irrespective of the trial court's omission, the State asserts the goal of the colloquy rule was met and the record, as a whole, indicates defendant's waiver was made knowingly and intelligently. This assertion is based on the fact that Cooley is an habitual felon, that he is familiar with our justice system, and that he has represented himself before. *See State v. Cooley,* 468 N.W.2d 833 (Iowa App.1991). The State points out that Cooley expressly indicated his desire to act pro se, that he had standby counsel, and that he was competent in the handling of his defense, as was demonstrated by his filing motions, conducting voir dire, making objections, examining witnesses, and preparing opening and closing statements.

■ The State is in essence arguing that the trial court's failure to engage defendant in an appropriate dialogue amounts to harmless error. Generally, a constitutional error can be held harmless if it is proven so beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967). The burden of providing such evidence rests squarely with the State. *Id.* Most constitutional errors can be held harmless. *Neder v. United States,* 527 U.S. 1, 7–8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 63 (1999); *Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302, 329 (1991). However, it is well recognized that a limited class of fundamental constitutional errors defy analysis by harmless error standards. *Neder,* 527 U.S. at 7–8, 119 S.Ct. at 1833, 144 L.Ed.2d at 46; *see also Fulminante,*

499 U.S. at 309, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. Errors which affect substantive rights are so intrinsically harmful as to require automatic reversal without regard to their effect on the outcome. *Neder,* 527 U.S. at 7–8, 119 S.Ct. at 1833, 144 L.Ed.2d at 46. Such errors can be characterized as affecting the framework within which the trial proceeds, as opposed to simple errors in the trial process. *Id.* at 7–8, 119 S.Ct. at 1833, 144 L.Ed.2d at 46; *Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. These errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may then be regarded as fundamentally fair. *Neder,* 527 U.S. at 7–8, 119 S.Ct. at 1833, 144 L.Ed.2d at 46–47 *(citing Rose v.. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986)).

The United States Supreme Court has declined to address the extent to which a *Faretta* hearing or inquiry is required to ensure a fair trial, and the federal circuit courts of appeal are split on the matter. *See McDowell v. United States,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987) (White, J. dissenting in the Court's denial of certiorari). In *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), though, the conviction of a pro se defendant adjudged competent to stand trial was vacated, because the record failed to show the trial court fulfilled its "protecting duty" by conducting an inquiry to determine that the defendant competently and intelligently waived his right to counsel. *Westbrook,* 384 U.S. at 150, 86 S.Ct. at 1320, 16 L.Ed.2d at 430.

The *Westbrook* decision created some question as to whether the standard for competence to stand trial was the same as that required to waive the right to the assistance of counsel. The Court settled this controversy in *Godinez* where it was held the two standards were indeed the same, and that both would be based on the precedent set forth in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *Godinez,* 509 U.S. at 396, 113 S.Ct. at 2685, 125 L.Ed.2d at 330; *see Dusky,* 362 U.S. at 403, 80 S.Ct. at 789, 4 L.Ed.2d at 825 (a defendant must have the ability to consult a lawyer with a reasonable degree of rational understanding, as well as a rational and factual understanding of the proceedings).

In defining *Westbrook,* the Court noted that the focus of a competency hearing is on the defendant's mental ability to understand the proceedings, whereas the purpose of a *Faretta* inquiry is to establish a defendant actually understands the significance and consequences of an uncoerced decision to proceed pro se. *Godinez,* 509 U.S. at 401 n. 12, 113 S.Ct. at 2687 n. 12, 125 L.Ed.2d at 333 n. 12. The Court explained that it had a two-part inquiry in mind when it decided *Westbrook,* which

> stands only for the unremarkable proposition that when a defendant seeks to waive his right to counsel, a determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted.

*Id.* at 401, 113 S.Ct. at 2688, 125 L.Ed.2d at 333–34.

The Supreme Court's reversal of the conviction in *Westbrook* was premised upon the trial court's failure to satisfy second prong of this test, *i.e.,* that a voluntary and intelligent waiver had been proffered.

 This court previously decided that harmless error analysis is not applicable to Sixth Amendment right to self-representation questions. *Rater,* 568 N.W.2d at 661. We based our decision in part on *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), in which the Supreme Court noted that since the right to represent oneself is a right that, when exercised, usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to

"harmless error" analysis. *McKaskle*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8, 79 L.Ed.2d at 133 n. 8. "The right is either respected or denied; its deprivation cannot be harmless." *Id.* at 177 n. 8, 104 S.Ct. at 950 n. 8, 79 L.Ed.2d at 133 n. 8. By corollary, just as depriving a defendant of the right to self representation fundamentally affects the process and outcome of a trial, so too does the invocation of that right. A defendant who has not knowingly, intelligently, and voluntarily waived the right to counsel has effectively been denied representation. The denial of an attorney during the critical stages of a trial can never be construed as harmless error. *Penson v. Ohio*, 488 U.S. 75, 88, 109 S.Ct. 346, 354, 102 L.Ed.2d 300, 313–14 (1988). As we liken the acceptance of an invalid waiver to the deprivation of counsel, harmless error analysis cannot be utilized as a curative measure, regardless of whether prejudice results from the trial court's error. *Rater*, 568 N.W.2d at 661.

Moreover, many of the criteria we might use to determine the existence of harmless error are not conducive to post-trial scrutiny. Some factors, like the nature of the charges, the education level of the defendant, and the defendant's experience with the legal system are easily reviewable at any point prior, or subsequent, to trial. Subjective factors, however, such as the defendant's reasons for forgoing an attorney, defendant's legitimate understanding of the charges and the consequences of a guilty verdict, as well as a knowledge of available defenses and the procedures that will be employed during trial, cannot be assessed under a harmless error analysis. Regardless of an accused's experience, these factors are unique to every proceeding and will weigh heavily in the determination of a defendant's ability to proceed pro se.

For these reasons a harmless error analysis cannot be utilized to cure the error incurred by an invalid acceptance of a defendant's waiver of the constitutional right to counsel and the resultant election to proceed with self-representation.

Our analysis leads us to conclude that the proceedings by which Cooley was tried and convicted violated his Sixth Amendment right to counsel under the United States Constitution.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED FOR A NEW TRIAL.**

All justices concur except CARTER, J., who dissents, and is joined by McGIVERIN, C.J., and LARSON, J.

CARTER, Justice (dissenting).

The case should not turn on an extensive demonstration that Cooley was told he would run a terrible risk if he proceeded without counsel. He had counsel. To be sure, the court was told of Cooley's intention of putting his attorney in a standby role. But judges should not be required to advise criminal defendants on trial strategy because such a requirement would arm them to manipulate the criminal justice system. *See State v. Glanton*, 231 N.W.2d 31, 35–36 (Iowa 1975) (judge should not contribute to advocate's role in trial process). Defendant should not be able to obtain relief because his decision proved to be a mistake.

I would affirm.

McGIVERIN, C.J., and LARSON, J., join this dissent.