# IN THE COURT OF APPEALS OF IOWA

No. 19-0641
Filed July 1, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JUSTIN L. ALEXANDER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

Justin Alexander appeals his convictions of domestic abuse assault (strangulation), domestic abuse assault while using or displaying a dangerous weapon, false imprisonment, criminal mischief, and possession of a firearm by a prohibited person. **AFFIRMED.**

Shawn Smith of The Smith Law Firm, PC, Ames, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Justin Alexander guilty of domestic abuse assault (strangulation), domestic abuse assault while using or displaying a dangerous weapon, false imprisonment, criminal mischief, and possession of a firearm by a prohibited person.  The district court adjudged him guilty and imposed sentence. On appeal, Alexander contends the court should not have allowed him to represent himself.  He also contends his trial attorney was ineffective in several respects.

## I.    *Self-Representation*

A defendant "has a Sixth and Fourteenth Amendment right to self-representation under the United States Constitution."  *State v. Cooley*, 608 N.W.2d 9, 14 (Iowa 2000); *see Faretta v. California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.").  Before the right to self-representation attaches, a defendant must voluntarily, clearly, and unequivocally elect to proceed without counsel.  *See State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997) (citing *Faretta*, 422 U.S. at 835).  The district court has an obligation to make the defendant "aware of the dangers and disadvantages of self-representation."  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)); *Hannan v. State*, 732 N.W.2d 45, 53 (Iowa 2007).

Alexander was represented by an attorney through most of the proceedings. Toward the end of trial, he raised the prospect of giving his own closing argument, but he appeared unsure about whether that was the right course.  The district court denied the request in light of his equivocation.

Alexander reprised his self-representation motion at the close of his case. The district court granted the motion after engaging him in a conversation about the request.

On appeal, Alexander contends:

> The facts establish that [he] (1) thought that a closing argument did not constitute legal representation; (2) asked the court to review his closing for objectionable material; (3) asked if defense counsel could object for him; [and] (4) resisted any information on jury instructions. Taken together, these facts establish that [he] did not fully understand that giving his own closing argument would constitute a waiver of his Sixth Amendment rights, did not fully understand that he would not have help, and did not fully understand the charges he was facing.

On our de novo review of this constitutional issue, we disagree with his contentions.

At the outset, Alexander confirmed he understood "the English language"; understood "everything [the court] said to [him]"; and was not "under the influence of any drugs, alcohol, [or] medication that would impair [his] ability to make this decision." He provided the court with an eight-part written closing argument he wished to make or have his attorney read verbatim. The court reviewed the document and advised Alexander that no evaluation would be made "about the propriety of [the] statement other than to ensure that [he received] a fair trial." When Alexander asked if he could simply read the closing statement and still have counsel represent him, the court responded:

> No. That's a very excellent question. You make a good point. That's where I'm getting to is once you tell me I want to represent myself, [counsel] takes a seat in the gallery. He's going to remain in the courtroom. If at some point you change your mind—if I grant your request. But he's not going to be there to guide you, to help you.
> Just a second. I just want to make sure—it's very important. You asked a good question, goes to the heart of what you're asking

me to do is your representation by yourself is exactly that. Self-representation.

You told me you don't have training in the law. I very much believe that you think that there's things that should be said that most likely you're not going to be able to say and having [counsel's] expertise—

. . . .

You have got a man sitting next to you with thirty-three years of trial experience. . . . Who has tried a lot of cases, knows the law, knows the rules and more importantly has an understanding of the strategy and finesse to persuade a jury.

The court also answered Alexander's question about whether counsel could respond to objections, stating:

If at that point that happens, you have a choice to continue to represent yourself or say I'm not going to represent myself further, at which point [counsel] will jump in. But I'm not going to jump back and forth. You see what I'm saying?

If you represent yourself and I allow you to do that and at some point you feel like the water is getting over your head and you ask him as stand-by counsel then to jump back in, we're not going to go back and forth and then have you represent yourself and then stand by.

At that point I'm going to consider it a waiver of your self-representation. He is then your attorney for the balance of the closing argument. Understand?

Alexander responded, "That's fine."

The court discussed the jury instructions with Alexander to ensure he understood "what the jury's going to be asked to consider when [he got] that opportunity" to read his closing argument. The court continued: "That's an instruction of the law and you're asking to give your closing argument about the facts of the case. The jury's job is to take those facts and apply them to the law. The law is contained in this instruction you see." Alexander stated he understood the specific instructions that the court read to him.

The court again summarized the disadvantages of self-representation, including Alexander's lack of familiarity with the law or court procedure, and reiterated that his attorney would serve only as "stand-by" counsel.[1] The court elicited an admission that no one coerced him to give his closing argument.

The court verbally granted Alexander's request to represent himself only after answering Alexander's insightful questions and only after ensuring he understood the ramifications. *See Cooley*, 608 N.W.2d at 15 (requiring a court to engage in a "searching" and "formal" inquiry before permitting a waiver of counsel).

The court memorialized the verbal order in a written ruling, which stated in pertinent part:

> During all of the court's colloquys with the defendant, he listened, responded appropriately, he asked good questions, and had prepared a novice but not entirely unreasonable closing argument after having listened to all of the evidence presented to the jury. After what the court concluded to be a searching colloquy with Mr. Alexander on more than one occasion during the course of these proceedings, and in which the court repeated several important considerations to Mr. Alexander, the court concluded that his waiver of counsel and decision to represent himself was voluntary, knowing and intelligent.

---

[1] "Standby counsel is a type of advisory counsel[] and serves two main purposes: (1) "to act as a safety net to ensure that the litigant receives a fair hearing of his claims," and (2) "to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case." *State v. Johnson*, 756 N.W.2d 682, 687 (Iowa 2008) (citing *Rater*, 568 N.W.2d at 658).

We conclude Alexander's waiver was voluntary, clear, and unequivocal.[2]

## II.    *Ineffective Assistance of Counsel*

Alexander claims his trial attorney was ineffective in: (a) failing to request severance of his possession-of-a-firearm charge, (b) stipulating to a prior domestic abuse conviction, and (c) failing to object to the court's "disparaging comments about [him] in the presence of the jury."  We preserve the claims for postconviction relief to afford Alexander's attorney an opportunity to respond to them.  *See State v. Trane*, 934 N.W.2d 447, 465 (Iowa 2019); *see also State v. Jenkins*, No. 09-1535, 2012 WL 299544, at *6 (Iowa Ct. App. Feb. 1, 2012); *State v. Van Dusseldorp*, No. 03-0849, 2004 WL 1854105, at *5 (Iowa Ct. App. Jul. 14, 2004); *State v. Everhart*, No. 99-1660, 2001 WL 58433, at *2 (Iowa Ct. App. Jan. 24, 2001); *State v. Dearborn*, No. 98-2225, 2000 WL 504500, at *3 (Iowa Ct. App. Apr. 28, 2000).[3]

**AFFIRMED.**

---

[2] The State suggests this is a case of "hybrid representation."  We disagree.  *See Johnson*, 756 N.W.2d at 688 n.3 ("The term 'hybrid representation' encompasses both standby counsel and a lawyer appointed as co-counsel with the defendant.").

[3] The order of disposition was filed before the effective date of Iowa Code section 814.7 (2019), which eliminated the ability to consider ineffective-assistance claims on direct appeal.  The amendment does not apply retroactively.  *See State v. Macke*, 933 N.W.2d 226, 228 ("[W]e hold Iowa Code section[] 814.7, as amended, do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019."); *cf. State v. Damme*, ___ N.W.2d __, ___, 2020 WL 2781465, at *3–4 (Iowa 2020) (applying the amendment to an order filed on July 1, 2019).