**IN THE COURT OF APPEALS OF IOWA**

No. 22-1849
Filed February 7, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**KELVIN DEVELL WILLFORM,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

A defendant appeals his conviction for possession of marijuana. **REVERSED AND REMANDED FOR NEW TRIAL.**

R.E. Breckenridge of Breckenridge Law, P.C., Ottumwa, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

"Let me represent myself, Your Honor." Kelvin Willform made this request at his final pretrial conference. But the district court refused and moved on to jury selection—not without difficulty. In the presence of the prospective jurors, Willform interrupted several times. His outbursts related to his court-appointed counsel: "I don't know this man." Despite Willform's insistence, the court left counsel in place, finding that Willform lacked the knowledge needed to represent himself. Willform now argues that the court denied his right to self-representation as guaranteed by the Sixth Amendment.[1] We agree. And because Willform was denied this constitutional right, we must reverse and remand for a new trial on his conviction for marijuana possession.

## I.      Facts and Prior Proceedings

In September 2021, officers arrested Willform for assault after he fought with another patron at the Catfish Bend Casino in Burlington. The fight was captured on video. Police searched Willform at the jail and found a package labeled "Berry Pie" that contained cannabis, a schedule one controlled substance. The State charged him with serious misdemeanor assault and possession of a controlled substance. Leading up to trial, Willform was appointed a series of attorneys. The first two attorneys withdrew after clashing with Willform. The third appointed attorney was Beau Bergmann. Just two days before trial, Bergmann also moved to withdraw, citing Willform's refusal to communicate with him. The

---

[1] Willform also argues that the court denied him the opportunity to participate in his trial, but we do not reach this argument.

court held a hearing on the motion to withdraw. At that hearing, Willform made his first request to represent himself.[2]

The court asked Willform: "Are you seeking to represent yourself today, which I don't recommend." Willform said he had "no choice."[3] Then the following exchange occurred:

> THE COURT: [A]re you comfortable with Mr. Bergmann remaining on the case as your counsel?
> THE DEFENDANT: I'm forced to act pro se for the best interests of justice. This man knows nothing about the case.
> THE COURT: Okay, I can only allow you to proceed pro se if you, in fact—we have to go through a question-and-answer session about that and you would have to make it clear to me that you do, in fact, want to represent yourself without the assistance of an attorney in a jury trial today.

Willform responded: "I'm forced." The court told him: "[Y]ou're not forced, because I have an attorney here with you that is ready." Willform continued to interrupt while attorney Bergmann tried to make a record about his preparation for the case. The court then returned to Willform's request to represent himself:

> THE COURT: Mr. Willform, you have indicated to the Court that you wish to proceed without counsel today. Can you outline for me your reason for that request?
> THE DEFENDANT: The reason for that request. I'm forced to act on my own. Nobody knows nothing about the case.

---

[2] Willform's second request was made during voir dire. Neither party focuses on his second request in their arguments. So we focus only on his first request.

[3] Willform expressed concern about Bergmann's ability to get up to speed on his case. The court assured him that Bergmann had done "many, many, many, many, criminal trials." Willform was unconvinced: "I don't care if he was Alfred Hitchcock, he cannot prepare a case in two days." Actually, Bergmann was appointed to represent Willform about one month before trial. He quickly filed a motion for discovery from the State, a motion in limine, and a notice of self-defense and justification.

The court then asked Willform his age (he was fifty-five) and his educational background (he finished twelfth grade). He also told the court that he "got a special education, but it's all right." The court then asked whether there was anything that would "hinder" Willform from representing himself, such as "limitations to [his] reading or writing skills" that would make it hard to represent himself. He replied that he did not have "the proper material" about the case because his attorneys had not provided him with that information.

The court then asked: "Do you have any addiction to drugs or alcohol that might affect your ability to understand what's taking place today?" After Willform's rambling reply, the court said: "I'm not tracking your answers, but we're going to keep going forward." The court then asked: "Are you under any medication today?" Willform revealed that he was "on muscle relaxers. And I just got off at work five this morning and I'm not properly prepared because I do not have none of the paperwork in my case, which I requested." Willform complained that he wanted "to see what was on the tapes" (presumably the video recordings of the casino floor) and "how they were tampered with to fit the criteria of the crime." This exchange followed:

> THE COURT: Mr. Willform, can you explain to me what you're charged with today?
> THE DEFENDANT: No, ma'am. I shouldn't be charged with anything.

After Willform said he didn't know his charges, the court found that he could not represent himself:

> THE COURT: Now, the defendant in any criminal matter certainly has a right under the Fifth and Sixth Amendment[s] to have counsel appointed to represent him. [Willform interrupts.] Now, that right to counsel that is mandated by the Constitution can be waived

through a clear and unequivocal assertion that the defendant wishes to proceed pro se. Now in order for the Court to allow a defendant to [Willform interrupts] certain findings have to be made. Number one, first and foremost, the defendant has to understand the nature of the charge. It is clear to me that Mr. Willform, by his own answers here today, does not. He needs to understand the statutory offenses within those charges that—in other words, lesser-included offenses. He does not. He would have to understand the range of allowable punishments. He does not. He would have to understand any possible defenses to the specific charges. He does not.

The court then recited the serial withdrawal of his court-appointed counsel—all "well-seasoned, veteran criminal defense attorneys and none have been able to work well with Mr. Willform." The court noted that the prosecution had been pending for nearly one year, and Willform had "shown up to the courthouse multiple times for potential trial dates, so I cannot find that there has been a clear waiver of counsel today." From that finding, the court denied Willform's "request for proceeding pro se." And Bergmann continued as counsel.

After that ruling, the attorneys started jury selection. Willform soon interrupted with an objection: "There's nothing fair about this trial. There's no exposure of the evidence." The court excused the jury and told Willform that it would not tolerate his disruptive behavior. He replied: "All I ask is to represent myself, Your Honor." The court did not entertain that request, instead warning Willform that if there were more interruptions, it would hold him in contempt. Attorney Bergmann asked to make this record: "In exiting the courtroom, Mr. Willform has been making comments in front of the jury that he does not know me, that this man is not an attorney." Willform again objected to Bergmann remaining as his attorney saying: "I represent myself." Willform repeated that refrain in front of the jury. The court then held him in contempt of court.

Willform again beseeched the court: "This man knows nothing about me. Let me represent myself, Your Honor—only I know my case." The court declined, stating that Willform's request was "untimely" at this point. Jury selection continued haltingly. The court cautioned Willform to stop scooching his chair closer to the jury box. Eventually the court banished Willform to the law library, and voir dire continued in his absence. The court allowed Willform back in after lunch. But he was removed and brought back once more.

After the jury was seated, the court sought Willform's assurance that he would conduct himself with decorum for the rest of the trial. He said he could. But he then returned to the court's question whether he knew what charges he faced. He complained about receiving paperwork in a different assault case. When his lawyer asked him to listen to the court, Willform said: "I'm trying to explain to her I'm capable of representing myself."

Rather than revisit his request to represent himself, the court removed Willform from the courtroom for his persistent disruption of the proceedings. Attorney Bergmann moved for a mistrial because Willform's actions "have made quite an impression on the potential jurors." The court denied the mistrial, citing other cases in which Willform had tried to delay the proceedings. Willform was not present in the courtroom for opening statements or the presentation of the State's witnesses. But he did testify in his own defense, claiming that he only struck the victim because "I knew he was gonna hit me."

The jury found Willform guilty of possession of a controlled substance, a serious misdemeanor in violation of Iowa Code section 124.401(5) (2021), and not guilty on the assault count. The judge sentenced him to thirty days in jail with all

but two days suspended and ordered him to pay a $250 fine.  The court also placed Willform on one-year unsupervised probation.

Willform appeals.

## II.    Analysis

Willform argues that the district court violated his right to self-representation guaranteed by the Sixth Amendment.[4]    The United States Supreme Court recognized that right in *Faretta v. California*, with this rationale:

> The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.  It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.  And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

422 U.S. 806, 834–35 (1975) (citation omitted).

While the Sixth Amendment right to counsel is in effect until waived, the "right to self-representation is not effective until asserted."  *State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000).  A defendant's request to proceed without counsel must be "clear and unequivocal."  *Rater*, 568 N.W.2d at 658 (citing *Faretta*, 422 U.S. at 835).

In this appeal, the State does not question the clarity of Willform's request to forgo counsel.  Indeed, Willform did not mince words in telling the court he wanted to represent himself.  He expressed that desire several times.  *See State v. Wehr*, 852 N.W.2d 495, 499 (Iowa Ct. App. 2014).  Granted, the court said it could not find that there had been "a clear waiver of counsel today."  But the court

---

[4] We review this constitutional claim de novo.  *See State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997).

made that statement while discussing how long the case had been pending and Willform's inability to work with appointed counsel. The court may have been worried, validly so, about Willform's intent to delay or disrupt the trial process with his request to represent himself. *See id.* at 501 (noting trial courts are "permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel" (quoting *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.2000))). But Willform did not request a continuance, and the court did not "probe for evidence of any dilatory intent." *Id.* at 502. What's more, the court did not identify delay or disruption as the reason for denying Willform's request to represent himself.

Rather, the court reasoned that it could not allow Willform to represent himself because he did not "understand" the nature of the charges, the lesser-included offenses, the range of allowable punishments, or the possible defenses. It's true that when defendants wish to proceed without counsel, courts must tell them about the dangers and disadvantages of proceeding without an attorney. *See State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000). Such a colloquy must investigate "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948)).

But the colloquy is not an entrance exam. *See People v. Silfa*, 106 Cal. Rptr 2d 761, 767–68 (Cal. Ct. App. 2001) (explaining that *Faretta* requires "a meaningful dialogue concerning the dangers and responsibilities" of waiving

counsel but is not "a test the defendant must pass in order to achieve self-representation"). It was the court's duty to determine whether Willform's choice to waive counsel was knowing and intelligent by telling him about the *Von Moltke* factors. *See Cooley,* 608 N.W.2d at 15. A waiver of counsel is intelligent if a defendant "knows what he is doing and his choice is made with eyes open." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). It was not the court's role to assess whether Willform came to the criminal trial equipped with the "technical legal knowledge" to waive his right to counsel. *See Finch v. Payne*, 983 F.3d 973, 981 (8th Cir. 2020). "[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Faretta*, 422 U.S. at 835 (recognizing that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel").

While the court did emphasize the difficulty of being one's own attorney, the court did not perform the model inquiry recommended by our supreme court. *See Martin*, 608 N.W.2d at 450 (citing *United States v. McDowell,* 814 F.2d 245, 251–52 (6th Cir.1987). If the court had followed that model inquiry, it would have conveyed information about the charged crimes and range of punishments. *See McDowell*, 814 F.2d at 251. Still, the State insists "the court's colloquy established Willform's inability to represent himself adequately." The State points to Willform's statement that he was on muscle relaxers, just got off work, was unprepared, and

did not know what charges he faced.[5]  The State asserts that the court performed sufficient inquiry to find that Willform was "unfit" to represent himself.

The State's argument blurs the line between Willform's "mental ability to understand the proceedings" which is the focus of a competency hearing, and the *Faretta* inquiry, which is necessary "to establish a defendant actually understands the significance and consequences of an uncoerced decision to proceed pro se." *See Cooley*, 608 N.W.2d at 17.  Neither at trial nor on appeal does the State contend that Willform was not competent to represent himself.  *See Indiana v. Edwards*, 554 U.S. 164, 173, 175–76 (2008) (limiting the right of self-representation for "gray-area" defendants who may be competent to stand trial but unable to "carry out the basic tasks needed to present [their] own defense without the help of counsel").  So our focus remains on whether his attempt to waive counsel was knowing, voluntary, and intelligent.

After asking Willform a few questions about his desire to represent himself, the court decided he could not waive his right to counsel.  Defending the court's action, the State argues that the degree of inquiry necessary varies with the nature of the offense and the ability of the accused to understand the process.  *See State v. Hindman*, 441 N.W.2d 770, 772 (Iowa 1989).  While that's true, the court took the wrong lesson from Willform's responses to its truncated inquiry.  The purpose of the inquiry was "to provide fair notice of the obstacles inherent in self-

---

[5] It is unclear from the record that Willform did not understand the charges against him.  His response to the question was flippant: "I shouldn't be charged with anything."  And later, he explained that the paperwork he received had a different name on the assault case.

representation before an accused embarks on so perilous an endeavor." *Cooley*, 608 N.W.2d at 16. It was not to disqualify Willform based on his answers.[6]

One last point. We acknowledge that Willform was a difficult defendant, contesting the preparation of appointed counsel and the actions of the court. His stubbornness was not new. Over a decade ago, our court observed "Willform is no novice in the criminal justice system." *State v. Willform*, No. 11-0079, 2012 WL 300317, at *2 (Iowa Ct. App. Feb. 1, 2012).[7] But his vexing behavior does not excuse the court's error. *See United States v. Taylor*, 21 F.4th 94, 97 (3d Cir. 2021); *see also Finch*, 983 F.3d at 982 ("While Finch's behavior is not that of the model defendant, we can understand the frustration of an individual who is attempting to assert his Sixth Amendment right, only to be ignored and forced to participate in a defense that is not his.").

Because the court denied Willform his right to self-representation, we must reverse and remand for a new trial on his conviction for marijuana possession. *See Wehr*, 852 N.W.2d at 502 ("Even though a defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to

---

[6] Even if Willform had objected, the court could have appointed Bergmann as standby counsel to assist with his defense. *See State v. Mott*, 759 N.W.2d 140, 147 (Iowa Ct. App. 2008).

[7] In that appeal, Willform told the trial court, "I feel I represent the case best because I know the case," and "I've concluded that I would rather represent myself." *Willform*, 2012 WL 300317, at *1. We rejected his claim that the court's *Faretta* colloquy, which extended more than twelve transcript pages, did not ensure that his waiver of counsel was knowing, voluntary, and intelligent. *Id.* at *1, n.1, *3.

counsel, his choice must be honored." (quoting *United States v. Turner,* 644 F.3d 713, 720 (8th Cir. 2011))).

**REVERSED AND REMANDED FOR NEW TRIAL.**