# IN THE COURT OF APPEALS OF IOWA

No. 23-1092
Filed June 18, 2025

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**CLIFFORD ARNELL GOODEN III,**
          Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Korie Talkington (preliminary hearing), Henry W. Latham II (*Frye* hearing), Stuart P. Werling (motions hearing), and Meghan Corbin (trial), Judges.

The defendant appeals from his conviction for second-degree burglary. **AFFIRMED.**

Webb L. Wassmer (argued) of Wassmer Law Office, PLC, Marion, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit (argued) and Olivia D. Brooks, Assistant Attorneys General, for appellee.

Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

A jury found Clifford Gooden III guilty of second-degree burglary; he was later sentenced subject to the habitual offender enhancement. On appeal, Gooden argues his constitutional right to counsel was violated because the district court allowed him to represent himself at critical stages of the prosecution leading up to trial without first obtaining a valid waiver of his right to counsel. Gooden also argues the district court should have sua sponte instructed the jury to not consider the fact he voluntarily absented himself from trial when deciding whether he was guilty of the charged offense.

**I. Background Facts and Proceedings.**

On May 20, 2022, the State filed a criminal complaint against Gooden, alleging he committed second-degree burglary when he forced his way into a friend's residence without permission and then swung a chair that he carried in from outside at the friend.

Gooden demanded a preliminary hearing, which took place one week later. He appeared without counsel and declined to apply for court-appointed counsel. As he had at the initial appearance, Gooden reiterated that he wanted to represent himself. After the hearing, the district court entered an order finding there was probable cause the offense was committed and that Gooden was the person who committed it. On May 27, the court appointed stand-by counsel as directed by Gooden, who qualified for court appointed counsel.

On July 5, the State filed a trial information charging Gooden with second-degree burglary and asserting the habitual offender sentencing enhancement applied.

Gooden continued to file motions with the court, and he represented himself at a couple different hearings. Then, on the morning of September 21, Gooden represented himself at what the court referred to as a *Frye* hearing,[1] where the State outlined the plea agreement it offered Gooden, and Gooden rejected the offer on the record.

A few hours later, the court reconvened for a hearing on several motions. At this hearing, the court engaged in a lengthy colloquy with Gooden, who then waived his right to counsel.

A jury trial commenced on September 26. Gooden represented himself with the assistance of standby counsel during jury selection, the State's case-in-chief, and his motion for judgment of acquittal.[2] After his motion was denied, Gooden left the courtroom and refused to return. The district court appointed standby counsel to represent Gooden in his absence; appointed counsel rested Gooden's case, worked on jury instructions, and presented a closing argument. The jury found Gooden guilty of second-degree burglary. He was later sentenced to a term

---

[1] In *Missouri v. Frye*, 566 U.S. 134, 144 (2012), the Supreme Court recognized,

> The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.

The "*Frye* hearing" here involved making a record showing Gooden was aware of the plea offer and his decision to reject it—not "[t]he defunct federal common-law rule of evidence on the admissibility of scientific evidence" that "required that the tests or procedures . . . [to] have gained general acceptance in their particular field." *Frye test, Black's Law Dictionary* (12th ed. 2024); *see also Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

[2] Gooden was appointed standby counsel for much of the time leading up to trial.

of incarceration not to exceed fifteen years with a three-year mandatory minimum sentence.

Gooden appeals.

## II. Waiver of Right to Counsel.

"In a state criminal proceeding, the defendant has a Sixth and Fourteenth Amendment right to counsel at all critical stages of the criminal proceeding and the corollary right to self-representation." *State v. Hardin*, No. 17-0595, 2017 WL 4050884, at *1 (Iowa Ct. App. Sept. 13, 2017); *see Iowa v. Tovar*, 541 U.S. 80–81 (2004) (recognizing the Sixth Amendment ensures the right to counsel "at all critical stages of the criminal process"); *Faretta v. California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."). Between the two, the right to counsel is preeminent—a defendant maintains the right to counsel until he or she invokes the right to represent themself and validly waives their constitutional right to counsel. *See Hannan v. State*, 732 N.W.2d 45, 52 (Iowa 2007) ("A defendant's constitutional right to counsel is effective until waived. Unless [the defendant] properly waived his right to counsel, [he] still had his constitutionally protected right to counsel at all critical stages of the criminal process." (cleaned up)); *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) ("[T]he right to be represented by counsel is preeminent . . . . So important is the right to counsel that the Supreme Court has instructed courts to indulge in every reasonable presumption against its waiver." (cleaned up)). "A defendant who has not knowingly, intelligently, and voluntarily waived the right to counsel has

effectively been denied representation." *State v. Cooley*, 608 N.W.2d 9, 18 (Iowa 2000). Our review of this issue is de novo. *Id.* at 13.

Here, it is undisputed that Gooden was allowed to represent himself[3] without waiving his right to counsel from his initial appearance on May 20, 2022, until a motions hearing on September 21, at which Gooden waived his right to counsel on the record. As we understand his argument on appeal, Gooden limits his constitutional challenge to this window—he does not contest the efficacy of the district court's colloquy on September 21; deny that his waiver of the right to counsel on that day was knowing, intelligent, and voluntary; or question that the waiver was valid for the rest of the criminal proceedings. We limit our review accordingly.

First, we determine when the right to counsel attached, as a defendant need not waive a right he or she does not have. Under both the Iowa and United States Constitution, the right to counsel "attaches at or after the initiation of adversary proceedings against the defendant, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *State v. Senn*, 882 N.W.2d 1, 8 (Iowa 2016) (citation omitted). Our supreme court has held that "the right to counsel does not just begin with the filing of the trial information or other formal charges." *State v. Green*, 896 N.W.2d 770, 777 (Iowa 2017). "Instead, a criminal prosecution for the purposes of the right to counsel can also begin once the

---

[3] We recognize that Gooden was appointed standby counsel at times. But the appointment of standby counsel does not cure the lack of valid waiver of counsel. *State v. Rater*, 568 N.W.2d 655, 661 (Iowa 1997) ("[T]he appointment of stand-by counsel is insufficient to satisfy the Sixth Amendment right to counsel when the court has failed to conduct an inquiry to ensure the defendant's waiver of that right was knowing and intelligent.").

preliminary complaint and arrest occurs." *Id.* So here, Gooden's right to counsel attached on May 20, when the State filed a criminal complaint alleging he committed second-degree burglary and Gooden was arrested and taken into police custody.

Next, we ask whether any of the points during which Gooden had not yet waived his right to counsel were "critical stages" of the criminal proceedings. *See Frye*, 566 U.S. at 140 ("It is well settled that the right to the effective assistance of counsel applies to certain steps before trial. The Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." (cleaned up)); *Senn*, 882 N.W.2d at 16 ("The Supreme Court employs a two-part test to determine whether the accused has a right to counsel. First, the right must have attached, which means that 'formal judicial proceedings have begun.' Second, it must be a 'critical stage' of the prosecution." (internal citations omitted)). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Frye*, 566 U.S. at 140. And "the right to counsel plainly extends to that critical stage of the prosecution in which a defendant considers pleading guilty to the charges." *Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Here, Gooden focuses his argument on the preliminary hearing held on May 27 and September 21 *Frye* hearing where an offered plea agreement was discussed (which took place before he waived his right to counsel at a second hearing later the same day). We agree that both were critical stages of the criminal proceedings, so Gooden had the right to counsel at each.

We recognize the cases from our supreme court hold that "harmless error analysis is not applicable to Sixth Amendment right to self-representation questions." *Cooley*, 608 N.W.2d at 17. "The right is either respected or denied; its deprivation cannot be harmless." *Id.* at 18 (quoting *McKasle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)). But in those cases, the defendant was never engaged in an adequate colloquy to make a knowing, intelligent, and voluntary waiver. *See Cooley*, 608 N.W.2d at 16 ("The failure of the trial court to inquire and advise the defendant of the dangers of proceeding pro se leaves the record deficient to permit the reviewing court to properly determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently."); *Hannan*, 732 N.W.2d at 53 ("In this case the trial court did not conduct the all important colloquy to make sure [the defendant] properly waived his right to counsel."). That is different than the facts before us here—it is undisputed Gooden knowingly, voluntarily, and intelligently waived his right to counsel five days before his criminal trial commenced. So, we do not think an automatic reversal of his criminal conviction and sentence is the right remedy. *Cf. Satterwhite v. Texas*, 486 U.S. 249, 257 (1998) (holding the automatic-reversal rule applies only when "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding," not "where the evil caused by the Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial").

In this instance, we think the appropriate question is whether Gooden being denied representation at the May 27 preliminary hearing and the September 21 *Frye* hearing affected the framework within which the later criminal trial proceeded. *See Cooley*, 608 N.W.2d at 17 (recognizing some constitutional errors "defy

analysis by harmless error standards" because they "affect[] the framework within which the trial proceeds" by "depriv[ing] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may then be regarded as fundamentally fair"); *see also State v. Borchers*, No. 22-1454, 2024 WL 467375, at *7 (Iowa Ct. App. Feb. 7, 2024) (refusing to apply automatic reversal and instead asking whether "the denial of [the defendant's] right to counsel at the pretrial hearing affect[ed] the entire criminal proceeding" when considering whether to reverse for lack of waiver of counsel). For the reasons explained below, we conclude the denial of representation at those two critical stages was not so intrinsically harmful as to require automatic reversal. *See Cooley*, 608 N.W.2d at 17.

While Gooden was wrongly denied representation at the preliminary hearing, any irregularity was cured by the subsequent filing of the trial information. As our supreme court explained in *State v. Petersen*:

> The filing of the complaint is necessary for the court to issue an arrest warrant for a defendant. A preliminary hearing is required in order to determine the legality of detaining a person accused of a felony or an indictable misdemeanor before the State files a charge by a trial information or a grand jury indictment. If the preliminary hearing reveals there is no probable cause to believe that an offense has been committed or that the defendant committed it, the court dismisses the complaint and discharges the defendant from custody.
>
> The filing of the trial information is necessary to charge a defendant with an indictable offense. The State can file charges by trial information without first filing a complaint. Once the State files the trial information, a preliminary examination is unnecessary. When the court approves the trial information, it determines whether there is probable cause to detain the defendant to answer the charge. *A violation in the complaint stage of the proceedings does not affect the merits of the charge*, but only affects the legality of the

> detention of the accused to answer the charge prior to the filing of the information.
>
> When the district court approved the trial information, it determined there was probable cause to detain [the defendant] and require him to answer to the charge . . . . *Once filed, the trial information was the pleading formally charging [the defendant] with a crime. At that point in the proceedings, any defect in the affidavit attached to the complaint was moot* and not grounds for dismissal of the trial information as a defect in the institution of the prosecution of the action.

678 N.W.2d 611, 614 (Iowa 2004) (emphasis added) (internal citations omitted). Because any issue with the preliminary hearing became moot once the trial information was filed, Gooden's lack of representation at the stage did not affect the framework of the trial.

For similar reasons, we also conclude that Gooden's lack of representation at the *Frye* hearing on the morning of September 21—when the State made a record of the plea agreement offered to Gooden and Gooden vigorously rejected it—did not affect the framework of the trial. At the motions hearing that took place later the same day, the court conducted a meaningful colloquy with Gooden, after which he knowingly, voluntarily, and intelligently waived his right to representation. As part of the colloquy, the court asked the prosecutor to explain the offered plea agreement and then verified with Gooden that he was not interested in accepting it. With the facts we have here, Gooden's rejection of the plea agreement, made contemporaneously with his undisputedly valid waiver of his right to counsel, overcomes any irregularity of the *Frye* hearing. Gooden never vacillated between pleading guilty and going to trial; he was adamant from the preliminary hearing onward that he was innocent of the charged crime and would not plead guilty to a

crime he did not commit—the stance Gooden took at the *Frye* hearing was the same stance he took a few hours later while waiving his right to representation.

While Gooden was denied representation at two critical stages of the criminal proceedings, the denial did not impact the framework of the trial, which took place after Gooden made a knowing, intelligent, and voluntary waiver of his right to counsel. The constitutional violation of his right to counsel does not entitle him to a new trial under these facts.

## III. Jury Instruction.

After the State rested, Gooden moved for judgment of acquittal, which the district court denied. The court then took a short recess. When court reconvened, the judge relayed that jail staff reported Gooden was "refusing to reenter the courtroom and has declined to participate any further in his defense." Gooden's standby counsel confirmed that he spoke with Gooden and Gooden told him, "I refuse to participate any further." The court then appointed Gooden's stand-by counsel to represent Gooden in his absence. The defense rested without presenting any evidence, and—outside the presence of the jury—the attorneys and court discussed jury instructions. Gooden's counsel did not request an instruction telling the jury not to draw any conclusions from Gooden's voluntary absence from trial when deciding whether he was guilty of second-degree burglary. But during the closing argument for the defense, counsel told the jury:

> Mr. Gooden, he chose to represent himself. And I'm appointed as standby counsel, if and when he is unable to fulfill that obligation. As you can tell, he's not present in the courtroom currently. From his absence—you're not really to infer anything from his absence. His absence is not evidence today. As [the prosecutor] noted, evidence is testimony and exhibits received in court.

On appeal, Gooden argues the district court should have sua sponte instructed the jury that it was not allowed to consider his voluntary absence from trial when deciding his guilt. By arguing the onus is on the district court— regardless of whether counsel raised the issue or requested the instruction— Gooden attempts to bypass the error-preservation issue that his argument was not raised and decided below. *Cf. Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). But the argument he presented has its own problem; Gooden concedes that he cannot cite any Iowa authority supporting his position that the district court has a duty to sua sponte give the instruction. And without any authority requiring the district court to give the instruction, we will not conclude the court committed reversible error by failing to do so. *See State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) ("This court reviews challenges to jury instructions for the correction of legal error.").

**IV. Conclusion.**

While Gooden was denied the right to representation at critical stages of the proceedings before he validly waived his right five days before trial started, the denial of his constitutional right did not affect the framework of the proceedings in this case; Gooden is not entitled to a new trial. And we cannot find the district court committed legal error by not sua sponte giving a jury instruction that is not required by Iowa law. We affirm Gooden's conviction.

**AFFIRMED.**