# IN THE COURT OF APPEALS OF IOWA

No. 23-0893
Filed April 23, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TIMOTHY ALAN GRIFFIN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Nancy L. Whittenburg (pre-trial hearings) and Charles K. Borth (trial), Judges.

A defendant appeals his conviction for possession of methamphetamine, third or subsequent offense, as a habitual offender. **REVERSED AND REMANDED FOR NEW TRIAL.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

Following a jury trial, the district court entered judgment and sentence against Timothy Griffin for possession of methamphetamine, third or subsequent offense, as a habitual offender. Griffin appeals.

I.       **Relevant Background Facts and Proceedings**

During a traffic stop, police officers searched Griffin's car after a K-9 alerted to the presence of drugs. Officers found a plastic bag containing methamphetamine tucked inside a sock on the floor of the car. As a result, the State charged Griffin with possession of methamphetamine as a third offense and as a habitual offender. At his arraignment, Griffin appeared without counsel and stated he was "attending pro se."[1] Griffin failed to appear at two subsequent pre-trial hearings and at a bail review hearing. The district court appointed standby counsel in between the two pre-trial hearings. Standby counsel filed a series of motions on behalf of Griffin. Standby counsel then filed a motion to withdraw, which the district court granted.

The next time Griffin appeared before the district court for a motions hearing, he again expressed his desire to represent himself. The court attempted to go through a colloquy with Griffin to ensure his waiver of counsel was knowing, voluntary, and intelligent. However, Griffin continued to interrupt the court, expressed his confusion about the judicial process, and was not responsive to the court's questions. Then he explained that some of his interruptions were due to a "recent head injury" and that he "had learning disabilities in school." In the end,

---

[1] The district court did not go through any colloquy regarding Griffin's decision to come before the court self-represented.

the court could not complete the colloquy given Griffin's non-responsive answers. The court then entered an order denying Griffin's request to proceed pro se because it could not conclude that Griffin's waiver of counsel was knowing and intelligent. The court, on its own motion, also set a probable cause hearing to determine whether Griffin was competent to stand trial and stayed the proceedings. Prior to the hearing, Griffin applied for appointed counsel, and counsel was appointed for him.

Griffin appeared at the competency hearing with counsel. Defense counsel explained that Griffin did not want to proceed with a competency evaluation and that counsel had talked with Griffin and was satisfied that Griffin understood the charges against him, the significance of those charges, and the importance of crafting a defense. Counsel then questioned Griffin, asking him: "And you are asking the court for an opportunity, either with court-appointed counsel or if I am directed to serve as standby counsel, you would like to have an attorney assist you in some way to present your defense at the time of trial; is that correct?" Griffin responded, "That is correct."

The prosecutor also questioned Griffin and inquired into the head injury Griffin referred to during the prior hearing. Griffin explained that the injury occurred at work in November 2019 and impacted his memory and ability to control his actions. Griffin confirmed he required special education services while in school. When asked about any mental-health diagnoses he had, Griffin explained, "I have a bipolar. I have chronic anxiety and depression. I am PTSD. It's not PTSD. It's adjustment, adjusting to my injuries and my mental status."

After some of its own questions, the district court stated it was "confident that [Griffin] underst[ood] the proceedings" and was "able to assist effectively with [his] defense." The court dismissed its motion for a competency evaluation and reinstated the proceedings.

On the day of trial, Griffin expressed his dissatisfaction with his counsel. When asked if he was requesting to proceed without an attorney or requesting new counsel, Griffin responded that he would be happy if he could be represented by the attorney who previously served as standby counsel. The court denied Griffin's request for different counsel, noting it would delay trial and that defense counsel was "one of the preeminent attorneys in northwest Iowa." Griffin then stated, "I will do my own, then. I will represent myself, then." The court denied that request.

Following a recess, defense counsel alerted the court that Griffin wished to not be present during jury selection or any other stage of the proceeding. Griffin then clarified that he just did not want to be present for jury selection. But when told he would need to stay in the courthouse should he decide to be absent from jury selection, Griffin decided to be present for jury selection.

Part way through jury selection, defense counsel informed the court that Griffin wished to excuse himself from the remainder of jury selection and "would like to make a claim that [defense counsel] threatened him in some way." Griffin, defense counsel, and the prosecutor then explained what each believed transpired between Griffin and defense counsel. Defense counsel reassured the court that he was "happy to represent" Griffin and had "no bias" against him.

The court then informed Griffin,

> The next record we make about you requesting to have [defense counsel] removed will be the last because I'll remove him, and then you'll be representing yourself without the assistance of me or the county attorney or anybody. And I'm just concerned that you don't have the legal knowledge to do that, that there are defenses that you might not even know exist, so then you wouldn't be able to present them.
>
> But if you choose to represent yourself, you'd be doing so at your own peril. But I'm not going to continue to make that record. So the next time we make that record will be the last because I'm going to grant it and we're just going to have to plow forward.

Griffin began to complain about counsel again. The court asked Griffin if he wanted to represent himself, and Griffin responded, "I—I—I don't but I don't want this man as—representing me. I—I—I don't." The court then informed Griffin of the potential sentence if he were to be convicted and confirmed that Griffin was not a lawyer himself. It went on to explain that an attorney might know more potential defenses than Griffin knew and that the court cannot provide a defendant with advice.

Griffin then stated that if he could not have a different attorney, then he still did not want defense counsel to represent him. The court excused defense counsel from any further representation of Griffin. The proceedings continued with Griffin representing himself through the first day of trial.

On the second day of trial, Griffin once again represented himself. However, following the lunch break, Griffin did not return to the courtroom. Griffin's brother informed court staff that Griffin had gone to the emergency room and "would not be participating in the rest of the trial." Officers checked the nearby emergency rooms and confirmed that Griffin was not at any of them. The court determined that Griffin was voluntarily absent and proceeded with the remainder of the trial in his absence.

Following the jury's return of a guilty verdict, the district court immediately proceeded with the second stage of the proceedings to determine whether Griffin had been previously convicted of drug-related offenses and had two prior felony convictions for the habitual-offender enhancement. Griffin was not present for that proceeding either. The jury determined that Griffin had been previously convicted of possession of marijuana with intent to deliver, possession of a controlled substance, possession of 42.5 or more grams of marijuana without affixing a drug tax stamp, possession of precursors with the intent to manufacture methamphetamine, and possession of marijuana.

Following a sentencing hearing, the district court entered judgment and sentence against Griffin for possession of methamphetamine, third or subsequent offense, as a habitual offender. Griffin received a sentence of up fifteen years in prison with a three-year mandatory minimum.

Griffin, now represented by counsel, appeals. Griffin argues the "district court failed to conduct both an adequate inquiry into Griffin's decision to waive his constitutional right to counsel and his competency to do so." He urges that his "decision to proceed pro se was not knowing, voluntary, or competent" and requests a new trial. Griffin also contends that the "district court erred in proceeding with the enhancement trial after determining Griffin voluntarily absented himself from the trial on the underlying offense."

## II. Discussion

We begin with Griffin's claim that he did not knowingly and voluntarily waive his right to trial counsel. As this claim is based on a constitutional guarantee, our review is de novo. *See State v. Johnson*, 756 N.W.2d 682, 686 (Iowa 2008). "The

Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). It also guarantees a defendant the right to self-representation. *Farretta v. California*, 422 U.S. 806, 807 (1975). The constitutional right to counsel is effective until waived by a defendant. *Hannon v. State*, 732 N.W.2d 45, 52 (Iowa 2007). "In other words, before the right to self-representation attaches, defendants must elect to proceed without counsel by a knowing, intelligent, and voluntary waiver of their right to counsel." *State v. Jones*, No. 19-0494, 2020 WL 3264377, at *3 (Iowa Ct. App. June 17, 2020) (citing *Faretta*, 422 U.S. at 835–36).

A defendant's waiver of the right to counsel "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948)). Such is necessary to ensure that the waiver is knowing. *Id.* The defendant must also be "admonished as to the usefulness of an attorney at that particular proceeding, and made cognizant of the danger in continuing without counsel." *Id.* A waiver that does not meet these criteria cannot be considered voluntary and intelligent. *Id.*

To ensure that a defendant has such understanding, the district court must engage in an extensive colloquy. Our supreme court has endorsed the colloquy outlined in *Spencer v. Ault*, 941 F. Supp. 832, 843–44 (N.D. Iowa 1996), to ensure a defendant wishing to proceed pro se appreciates the impact of waiving the right

to counsel. *State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000). That model colloquy includes the following questions:

(a)  Have you ever studied law?

(b)  Have you ever represented yourself or any other defendant in a criminal action?

(c)  You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)

(d)  You realize, do you not, that if you are found guilty of the crime charged in Count I the court . . . could sentence you to as much as __ years in prison and fine you as much as $__? (Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)

(e)  You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(f)  You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

(g)  Are you familiar with the [Iowa] Rules of Evidence?

(h)  You realize, do you not, that the [Iowa] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(i)  Are you familiar with the [Iowa] Rules of Criminal Procedure?

(j)  You realize, do you not, that those rules govern the way in which a criminal action is tried in [this] court?

(k)  You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(l)  (Then say to the defendant something to this effect): I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n)  Is your decision entirely voluntary on your part?

(o)  If the answers to the two preceding questions are in the affirmative, you should then say something to the following effect: "I

find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

      (p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

*Spencer*, 941 F. Supp. at 843–44 (quoting 1 Bench Book for United States District Judges 1.02-2 to 1.02-5 (3d ed. 1986)). Certainly, these questions serve only as a model, and exacting repetition of them is not required. But they generally inform us of what information must be gathered and considered by the district court before it can determine whether a defendant's waiver of counsel is knowing, intelligent, and voluntary.

As the dissent points out, when conducting our review of the district court's waiver-of-counsel colloquy, the majority of a panel of this court has recognized that we may consider multiple colloquies in aggregate when determining whether the district court conducted an adequate inquiry to ensure that the defendant's waiver was knowing, intelligent, and voluntary. *See State v. Baker*, No. 11-0068, 2013 WL 751286, at *3–4 (Iowa Ct. App. Feb. 27, 2013). But we decline to take that approach in this case for two key reasons. First, the gap between the two colloquies is significantly longer here (eight weeks) than it was in *State v. Baker* (three weeks). *See id.* at *3. Second, there is no indication in *Baker* that the defendant had any mental-health issues. In contrast, Griffin informed the district court of his mental-health struggles when it first attempted to go through the waiver-of-counsel colloquy, and his answers to questions during that colloquy were so non-responsive that the district court had concerns about Griffin's competency. Given the mental-health issues raised here, the significance of which are

compounded by the length of time between the two colloquies, we find this case distinguishable from *Baker* and decline to treat the two colloquies as if they were one. As such, we look only to the second waiver-of-counsel colloquy, from the day of trial, to determine whether Griffin's waiver was knowing, intelligent, and voluntary.

The district court did a good job of warning Griffin of the likely pitfalls of self-representation, the possible penalties he could face if convicted, and the fact that the court could not provide him guidance or assistance. But it did not inquire into Griffin's knowledge of any of our court rules, his understanding that he would be required to comply with those rules, his experience with the legal system, or his level of education. It did not explain to Griffin that he would not be able to simply get on the stand and tell his story. Nor did the court inquire whether Griffin's waiver of the right to representation was voluntary to confirm Griffin was not coerced or felt pressured into self-representation. The closest the court got to that inquiry was when it asked if Griffin wanted to represent himself as he had early on in the proceedings. Griffin responded, "I—I—I don't."

Moreover, the court had information that Griffin had suffered from a head injury in recent years that he claimed impacted his memory and ability to focus, which was borne out by Griffin's conduct before the district court. Griffin stated several times that he was slow and had been in special education classes. And Griffin had also told the court the day of trial that he was "having an extreme anxiety and panic attack" and that he didn't have his medication with him to take, to which the court admonished him for not bringing it. The court asked no questions relating

to these facts to determine how they might impact Griffin's ability to represent himself or his ability to invoke his right to self-representation.

Lastly, we highlight the district court's careful-what-you-wish-for warning to Griffin:

> And, Mr. Griffin, I'll tell you this: *The next record we make about you requesting to have [defense counsel] removed will be the last because I'll remove him, and then you'll be representing yourself without the assistance of me or the county attorney or anybody*. And I'm just concerned that you don't have the legal knowledge to do that, that there are defenses that you might not even know exist, so then you wouldn't be able to present them.
> *But if you choose to represent yourself, you'd be doing so at your own peril. But I'm not going to continue to make that record. So the next time we make that record will be the last because I'm going to grant it and we're just going to have to plow forward*.

(Emphasis added.) This warning makes clear that the district court had reached a point of frustration, which is entirely understandable given Griffin's conduct and unrelenting attempts to stonewall the proceedings. And we recognize that Griffin's difficult conduct put the district court in the tough spot of being accused of committing error whichever way it went—accused of violating Griffin's right to self-representation if it required him to proceed with counsel and accused of violating Griffin's right to counsel if it let Griffin proceed with self-representation. But even the most difficult defendants are entitled to constitutional protections and process.

The district court's warning suggests it did not intend to engage Griffin in a meaningful colloquy about his waiver of his right to counsel. And that's what occurred. The district court failed to make the necessary meaningful inquiry of Griffin to determine that he knowingly and voluntarily waived his right to counsel. As a result, we conclude that Griffin did not knowingly and voluntarily waive his right to counsel. "A defendant who has not knowingly, intelligently, and voluntarily

waived the right to counsel has effectively been denied representation. The denial of an attorney during the critical stages of a trial can never be construed as harmless error." *Cooley*, 608 N.W.2d at 18. As such, we reverse Griffin's conviction and remand for a new trial. Based on this resolution, it is unnecessary to address Griffin's challenge to the court proceeding to the enhancement phase of the trial in his absence.

**REVERSED AND REMANDED FOR NEW TRIAL.**

Badding, J., concurs; Buller, J., dissents.

**BULLER, Judge** (dissenting).

> I've never had an experience like this in nineteen years that I've been doing this, never. I've had some difficult folks, but nobody that couldn't be reasonable and I couldn't communicate with; that we couldn't get on the same communication wavelength.

That's how an experienced district judge described her attempts to advise Timothy Griffin on the perils of self-represenation when he sought to proceed pro se before trial. And another experienced district judge had a similar frustrating colloquy with Griffin at trial before Griffin ultimately absconded and was tried in absentia.

Difficult defendants like Griffin put district courts in a Catch-22: if the court accepts a difficult defendant's request to be relieved of counsel, the court risks reversal as outlined in the majority opinion; and if the court went the other direction and saddled a defendant with counsel despite his "Sovereign Citizen"-style[2] complaints, the court would risk reversal for violating the right to self-representation. *See Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (on the fine line district courts walk in facing this dilemma). Although it's easy to nitpick and second-guess from the comfort of appellate review, I do not find any material deficiencies in the record made by the district court below. I therefore dissent from granting a new trial.

In reviewing self-representation colloquies, the United States Supreme Court has instructed courts to take a "pragmatic approach" and allow flexibility in

---

[2] Sovereign citizens "believe they are not subject to the jurisdiction of the courts and . . . frequently deny that they are the defendants in the action, instead referring to themselves as third-party intervenors . . . . Courts have been confronted repeatedly by their attempts to delay judicial proceedings and have summarily rejected their legal theories as frivolous." *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013). *See generally* Leslie R. Masterson, *"Sovereign Citizens": Fringe in the Courtroom*, Am. Bankr. Inst. J., Mar. 2011, at 1, 66–67.

"the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). The purpose of the colloquy is to ensure a defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States*, 317 U.S. 269, 279 (1942). Or, as our supreme court put it, the colloquy must "provide fair notice of the obstacles inherent in self-representation before an accused embarks on so perilous an endeavor." *State v. Cooley*, 608 N.W.2d 9, 16 (Iowa 2000). Also as part of our review, a panel of our court previously recognized that colloquies from separate hearings may be considered in the aggregate when evaluating whether a defendant was adequately advised. *See State v. Baker*, No. 11-0068, 2013 WL 751286, at *3–4 (Iowa Ct. App. Feb. 27, 2013).

The majority seizes on three perceived deficiencies in the district court's colloquies to warrant reversal:

- "[N]ot inquir[ing] into Griffin's knowledge of any of our court rules, his understanding that he would be required to comply with those rules, his experience with the legal system, or his level of education."

- "[N]ot explain[ing] to Griffin that he would not be able to simply get on the stand and tell his story."

- "No[t . . .] inquir[ing] whether Griffin's waiver of the right to representation was voluntary to confirm Griffin was not coerced or felt pressured into self-representation.

I am not persuaded any of these are a good reason to reverse.

As to the first criticism, regarding Griffin's knowledge and education on pitfalls of self-representation, I would find the district court discussed this issue adequately across the two colloquies. In the first motions colloquy, the court advised Griffin on the importance of counsel's assistance in addressing specific

legal concepts like depositions, voir dire, legal defenses, mitigating factors, motions in limine, opening statements and closing arguments, the offer of evidence and objections to the same, cross-examination, and the difference between counsel and standby counsel. The court's attempt to explain these things to Griffin and conduct a thorough colloquy was done with patience and perseverance over the course of more than forty transcript pages, despite Griffin's conduct—which ranged from obstreperous to disruptive and personally insulting. When the court (through a second judge) revisited the issue at trial, the court referenced the earlier proceedings and emphasized that Griffin was not an attorney while his appointed lawyer was; that the lawyer could spot defenses and other issues such that Griffin might not "even know what [he was] missing"; and that the court could not give legal advice. Despite this, Griffin turned down the continued involvement of his attorney and elected to proceed without counsel until he absconded. In my view, the court's extended attempts to advise Griffin as to the pitfalls related to his lack of legal knowledge were sufficient to open his eyes and give him fair notice of the hazards attendant self-representation. *See Adams*, 317 U.S. at 279. That is all our law requires—"some sort of meaningful colloquy." *Cooley*, 608 N.W.2d at 15.

As to the second criticism—that the district court didn't inform Griffin he couldn't "simply get on the stand and tell his story"—I am not convinced such an advisory was required. The majority cites no legal authority requiring such an instruction, nor does Griffin in his appellate brief. And I'm not aware of any case so holding. Nor would I be inclined to adopt that rule, as it is neither reasonable nor feasible to expect a district court to disabuse a "Sovereign Citizen" defendant of every legally erroneous assumption he or she may bring to the courtroom.

Taken to its logical conclusion, such a holding would require judges to explain the fringe on the flag before allowing waiver of counsel.[3]  That would be absurd.

As to the third criticism levied by the majority—that the court didn't do enough to ensure Griffin was making a knowing and voluntary waiver—I find the record sufficient.  As the court recognized in the colloquy at trial, Griffin had already attempted to represent himself earlier in the proceedings and understood the difference between proceeding with counsel and without.  And the forty-plus pages of colloquy with the court at the earlier hearing included numerous questions by the court geared at assessing whether Griffin was able to make a knowing and voluntary waiver.  Courts do not torture answers out of defendants, and no fault lies with the district court for Griffin refusing to answer repeated colloquy questions. I am not inclined to find a record insufficient when the alleged deficiency was caused by behavior like the defendant responding to the court's inquiry of "Are you presently on any medication?" by asking the judge: "Are you?"

Last, I worry that the message sent to criminal defendants by the majority opinion is that, if you are difficult enough, interrupt the judge enough, and refuse to answer enough questions during a colloquy, there is a get-out-of-jail-free card waiting for you on appeal.  I do not condone such a message, find no reversible error in this record, and believe the majority holding to be deeply fact-bound or a misapplication of controlling precedent.  I therefore dissent.

---

[3] See, for example, Masterson, *"Sovereign Citizens": Fringe in the Courtroom*, Am. Bankr. Inst. J., at 67 (giving a quick primer on the fringed-flag claptrap).